LEVY, Judge.
A condominium association (plaintiff below) challenges the trial court’s determination that a successor “developer” who acquired the creating developer’s entire remaining inventory of unsold apartments is not also a “purchaser” of the units, and, accordingly, need not contribute to the association’s working capital account. We affirm the trial court’s partial summary judgment in favor of the successor developer, finding that the trial court was eminently correct in making the findings contained therein.
In October 1985, after having sold approximately one-third of the apartments in the Horizons North condominium complex in northern Dade County to other buyers, the creating developer, F. & R. Builders, Inc. (now known as Lennar Homes, Inc.) [Lennar], closed on the sale of its inventory of 60 unsold apartments to appellee Norbro I [Norbro], a Florida limited partnership. The partnership’s offering memorandum disclosed that the partnership’s investment objective
will be to operate the [cjondominium [ajpartments as rental properties and to hold them for the possibility of long term capital appreciation, which is expected to be realized upon the sale of the [cjondom-inium [ajpartments within a seven-year period. The General Partners anticipate a bulk sale of all of the [cjondominium [ajpartments at the end of a seven year period, but it is possible that the General Partners may decide to sell some or all of the [cjondominium [ajpartments individually.
The transaction with Norbro comprised the contract of sale and purchase, sixty individual warranty deeds executed by Len-nar conveying title to each of the individual apartments, and a separate document entitled “Assignment of Leases, Warranties, Guaranties, Plans and Specifications, Name and Miscellaneous Rights” [“Assignment of Leases”] whereby Lennar assigned to Norbro all of its rights as developer. Under section 17 of the prospectus for the Horizons North development, at the time of closing a “purchaser” is to make a non-refundable contribution to the condominium association’s working capital account in an amount equal to two-months’ assessments for common expenses. Norbro did not make this contribution, and appellant Horizons North Condominium No. 1 Association, Inc., [Association] filed suit seeking, inter alia, damages as a result of this nonpayment and injunctive relief requiring that Norbro obtain Association approval prior to the leasing of the 60 units.
Norbro answered and admitted its failure both to pay the working capital contribution and to obtain prior approval regarding the leases, but sought to avoid these obligations by relying on the “Assignment of Leases” from Lennar and claiming that it thereby succeeded to Lennar’s rights and was now the successor “developer.” Association moved for partial summary judgment on the issue of Norbro’s status as “developer;” Norbro moved for summary judgment seeking a declaration that it was the “developer” and that, as such, it was exempt from the leasing restriction and was not obligated to make contributions to the working capital account. The court *528 entered a partial summary judgment in favor of Norbro on the above two counts, finding: 1) that Norbro was the “developer” of Horizons North Condominium No. 1 as that term is used in the documents governing that development; 2) that, as the developer, Norbro was exempt from the leasing restrictions set forth in the Declaration of Condominium, and; 3) that Norbro was not required to contribute to Appellant’s working capital account as a part of the October, 1985 sale. Association only moved for a rehearing of the trial court’s ruling regarding the working capital contribution issue. The trial court denied this motion, and Association appeals only this issue.
As a preliminary matter, we note that neither the condominium documents nor the relevant statutory law cast any direct illumination on the definition of a “purchaser.” The condominium documents neither define the word nor offer a rule of construction. Likewise, the Condominium Act, Chapter 718, Florida Statutes (1987), does not include “purchaser” within its definitional Section 718.103. However, under Section 718.103(14) “ ‘[djeveloper’ means a person who creates a condominium or offers condominium parcels for sale or lease in the ordinary course of business, but does not include an owner or lessee of a condominium or cooperative unit who has acquired his unit for his own occupancy ... “[Emphasis supplied]. See Fla.Stat. Ch. 718, Part V (1987); see generally Fla.Admin.Code Ann. r. 7D-15.007(l)(a), (b) (for definitions of “creating” and “successor” developer in related context of Ch. 718, Part V, Regulation and Disclosure Prior To Sale of Residential Condominiums). Norb-ro has stated that its units were being acquired for lease and resale, not for Norb-ro’s own use or occupancy. Further, Association itself assists us in our definitional task: it has not challenged the trial court’s ruling that “[a]s the developer, ... Norbro ... is exempt from the leasing restrictions set forth in the [declaration of [c]ondomini-um.” Apparently, then, Association concedes that, at least as to this point, Norbro is the developer.[1] Association’s argument would then seem to be that Norbro may be the developer for purposes of qualifying for the exception to the leasing restrictions while at the same time it may be a purchaser for purposes of making the rather substantial financial contribution to Association’s working capital fund. We disagree. Appellant may not have it both ways.
Norbro asserts both the language and the import of the relevant documents to argue convincingly that it is not a “purchaser.” The relevant condominium documents are drafted in terms of developer and purchaser. These terms, it would seem, are factually and legally distinct, and mutually exclusive. Under the “Assignment of Leases”, Lennar as assignor transferred to Norbro as assignee
“[a]ll of [assignor's interest of any nature and any property or rights serving the [p]remises or any of the [projects including, without limitation, any and all rights of [ajssignor as ‘developer’ or ‘de-clarant’ under the documents governing each Association and Property Association.”
While the contract of sale and purchase is drawn in terms of purchaser and seller, its content is quite different from that of the form contract set out in the prospectus for use in selling units under the prospectus. Indeed, it is quite apparent that the entire transaction by which Norbro acquired the subject units is much larger in scope than, and qualitatively different in nature from, the usual transactions contemplated under the prospectus. The form “agreement for sale” contained in the prospectus and utilized in the ordinary course of selling condominium units is a nine-page document containing the statutorily-required caveat disclaiming any oral representations and referring the purchaser instead to Section 718.503 of the Florida Statutes. By contrast, the contract of sale and purchase under discussion is a twenty-four page tome, providing for eighteen exhibits cross- *529 referenced to various contract paragraphs, and is without the above-mentioned caveat. It cannot be disputed that the contract of sale and purchase was specifically drawn outside of the prospectus and that, in the event of any action to enforce its terms and/or provisions, Norbro would be without the protections of the prospectus and its representations, and, accordingly, without Chapter 718’s usual protections.
Upon a sale to ultimate “purchasers” who take title to their units and receive their interests by, through, and under the prospectus and the related standard condominium documents, the then-“developer” may at that time take appropriate steps to secure the working capital contributions from the then-“purchaser”.
Affirmed.

. Indeed, Association has never challenged the legality of Lennar's transfer of its developer’s interest to Norbro.