593 So.2d 40 (1992)
Thomas E. SIMMONS, Kent E. Lovelace, Jr., and JOM Baron, Inc.
v.
BANK OF MISSISSIPPI.
No. 90-CA-0715.
Supreme Court of Mississippi.
January 15, 1992.
William B. Weatherly, Gulfport, for appellant.
Michael P. Collins, Page Mannino & Peresich, Biloxi, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and PITTMAN, JJ.
*41 ROBERTSON, Justice, for the Court:

I.
Today's appeal asks that we decide whether a lessee may, of right and prior to the end of the lease term, remove physical facilities through which lessee operates a branch bank. The case requires that we construe privately-made lease and sublease agreements against the backdrop of our common law of trade fixtures and other lessee-made improvements to leased premises. The Chancery Court held that lessee had the right to remove the building. We affirm.

II.
JOM Baron, Inc., ("Landowner") is the record title holder of a 0.57 acre tract of land at the corner of Washington Avenue and U.S. Highway 90 in Ocean Springs, Mississippi. By virtue of a lease agreement of August 16, 1972, and a sublease agreement of August 31, 1972, Bank of Mississippi ("Bank/Lessee") holds a leasehold interest in this land for a period of twenty-five years from and after September 5, 1972.
At the time of the original lease agreement, the premises were unimproved. Shortly thereafter, the Bank's predecessor in interest constructed of steel and concrete a two-story branch bank building, containing approximately 5,000 square feet of floor space and resting on a concrete foundation. The building was complete with a vault, a drive-in facility, a night depository, and automatic teller machine. Landowner's predecessors in interest in no way participated in the construction of the building or the financing thereof. The Bank's predecessor used its own contractor and supervised the construction and paid all bills for labor and materials.
In the Summer of 1989, the Bank and its Lessor Landowner became involved in a dispute over the Bank's right to remove the building from the premises, the Bank insisting that it owned the building and by reason thereof had the right to remove it, while Landowner claimed the building had become so affixed to the realty that Bank as Lessee had no right of removal. Two clauses of the aggregated lease agreement are of consequence. Clause 6 reads:
Within sixty (60) days after termination of this lease, ... [Landowner] shall have the option of requiring the Lessee to remove structures or installations placed upon the leased premises or of removing them at the cost of the Lessee, which cost the Lessee agrees to pay, or of allowing them to remain, in which event their title shall vest in... [Landowner] and the Lessee shall have no further claim to them.
Clause 9 reads:
Lessee agrees to surrender possession of the demised premises at the expiration of this lease, and further agrees to remove all improvements thereon prior to such expiration, and default by Lessee in removing such improvements shall result in title to such improvements vesting in Lessor.
The Chancery Court of Jackson County considered this privately-made law against the backdrop of our common law of land-land and tenant and found:
The improvements were constructed on the subject property by the Bank for the sole purpose of the exercise of the business of Bank. The improvements were designed by Bank, and Bank has operated a branch bank and drive-in facilities in said improvements from the date that same were completed and continues to do so today. By requiring the removal of the improvements in paragraph nine of the sublease prior to the termination of said lease, it was contemplated by the parties that the improvements would remain personalty and not become a part of the freehold.... Judgment is entered in favor of the plaintiff [Bank].
Importantly, the Chancery Court credited the testimony of Ken Harper, local housemover, and found as a fact that "the improvements can be removed."
Landowner now appeals to this Court.

III.
The branch bank facility at issue is a lessee-made improvement to leased *42 premises and whether it be formally labeled a trade fixture is unimportant. The relative rights of parties holding competing interest in such improvements have vexed the bench and bar of this state for more than a century.[1] For better or for worse, we long ago borrowed from England and accepted into our law the general rule that whatever is affixed to land becomes a part of the realty. See Stillman v. Hamer, 7 How. (8 Miss.) 421 (1843). From the beginning we have seen the harshness of this rule in many contexts and have held it should be relaxed in favor of tenant against landlord, of lessee against lessor, particularly in a commercial lease setting. Weathersby v. Sleeper, 42 Miss. 732, 741 (1869). In Waldauer v. Parks, 141 Miss. 617, 106 So. 881 (1926), we recited the general rule and reiterated that it is subject to "exceptions and qualifications."
The greatest relaxation of it is in favor of tenant who has erected structures on the land during his tenancy. The general rule is applied ... with much leniency as between landlord and tenant.
Waldauer v. Parks, 141 Miss. at 625, 106 So. at 882. We reaffirmed this view in Connolly v. McLeod, 212 Miss. 133, 141, 52 So.2d 473, 476 (1951). Polk v. Gibson Products Co. of Hattiesburg, Inc., 257 So.2d 225, 231-32 (Miss. 1972), is to like effect.
Anderson-Tully Co. v. United States, 189 F.2d 192 (5th Cir.1951), concerned Mississippi lands and found the Court of Appeals stating:
It was recognised by the Supreme Court as early as 1829 that the general rule of the common law, that whatever is once affixed to the freehold becomes a part of it and cannot afterwards be removed by a tenant, was subject to exception in the case of buildings and other fixtures placed on the premises for the purpose of trade or manufacture and not intended to irrevocably become a part of the realty. As between landlord and tenant, the greatest latitude and indulgence are to be allowed in favor of the tenant's claim that certain articles should be considered personalty rather than a part of the freehold.
Anderson-Tully Co. v. United States, 189 F.2d at 196; see also, Motorola Communications and Electronics v. Dale, 665 F.2d 771, 773 (5th Cir.1982).
Against this backdrop, it is important to understand that for well over a century, we have accepted that lessor and lessee may agree among themselves regarding title to and removal of improvements and may reflect their wishes in formal agreements this Court will enforce. See, e.g., Bondafoam, Inc. v. Cook Construction Co., Inc., 529 So.2d 655, 658 (Miss. 1988); Richardson v. Borden, 42 Miss. 71 (1868); see also, Thompson, Commentaries on the Law of Real Property, § 80 (Rep.Vol. 1959). And so we find it commonly provided in lease agreements what rights and duties the parties have respecting the improvements.
Today's case involves two clauses addressing the matter of the improvements, but neither speaks precisely to the point, and because this is so, we reiterate certain basics. In UHS-Qualicare v. Gulf Coast Comm. Hosp., 525 So.2d 746 (Miss. 1987), we find:
It is said that the first rule of contract interpretation is to give effect to the intent of the parties. Sumter Lumber Co. v. Skipper, 183 Miss. 595, 608, 184 So. 296 (1938). More correctly stated, our concern is not nearly so much what the parties may have intended as it is what they said, for the words employed are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy.
Id. at 754.
A like sentiment is proclaimed in Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416 (Miss. 1987) to the effect that
The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards. A court must effect a determination of the *43 meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties."
Id. at 419. The Cherry court went on to point out that mere disagreement about the meaning of a contract clause does not make it ambiguous as a matter of law. Id. See also, Cooper v. Crabb, 587 So.2d 236, 241 (Miss. 1991).
We must read these two clauses in the manner that best fits the words of the lease in its entirety, open to the implicit, as we absorb the explicit. We seek as well that meaning most coherent in principle with the best justification which may be found for this language, cf. McIntire v. Moore, 512 So.2d 687, 689 (Miss. 1987); Warren County v. Culkin, 497 So.2d 433, 436 (Miss. 1986), given the underlying substantive facts, most important of which are that Landowner put not one penny into the building Bank's predecessor built and that the building may feasibly be removed without undue harm to the remainder.
Clause 6 quoted above provides that, in the event Landowner does not require Bank to remove the structures within sixty days after termination, Bank will pay the cost of removal. There follows the important language that Landowner will have the option
of allowing ... [the improvements] to remain, in which event their title shall vest in the ... [Landowner] and ... [Bank] shall have no further claim to them.
We find it unavoidably implicit that prior to the operative point in time, title is not in Landowner, but rather is held by Lessee Bank, the party whose predecessor at its expense put up the building in the first place.
Clause 9 admits of a similar view. Bank agrees to remove improvements prior to expiration of the term of the lease,
and default by Lessee in removing such improvements shall result in title to such improvements vesting in Lessor.
Again, implicit in the grammatical and linguistic usage is the legal fact that, prior to such default, title does not reside in Landowner but is held by the Lessee Bank. No other provision of the lease addresses the matter or is in any way in conflict with this view.
Landowner does not deny this essential premise. At page twelve of its brief, we find this statement:
Appellants admit that immovable non-fixtures located on the demised premises belong to Bank of Mississippi.
After this curious concession, Landowner goes on to argue that the parties knew all along that a contract for constructing a building was imminent when the lease was entered, that one day the Bank "would have to, almost certainly, leave without its building." The problem is that nothing in the lease says so much as a word to this effect. See Cooper v. Crabb, 587 So.2d 236, 241 (Miss. 1991).

IV.
Landowner argues that the Chancery Court erred when it sustained Bank's objection to the proffered testimony of Landowner's expert witness, civil engineer Aaron E. Masters. Landowner's purpose was to rebut the testimony of the Bank's witness, Ken Harper, an experienced housemover, who had explained the feasibility of removing the building to other premises.
In pre-trial discovery, the Bank had formally requested that Landowner give notice of any expert witness it contemplated using at trial. See Rule 26(b)(4), Miss. R.Civ.P. Landlord did not disclose Master's name in response to the interrogatories nor did it supplement its answers before trial. The Chancery Court was well within its authority when it sustained the Bank's objection by reason of this discovery violation. See Rules 26(f)(1) and 37(b)(2)(B), Miss.R.Civ.P.; Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1367-68 (Miss. 1990); Ladner v. Ladner, 436 So.2d 1366, 1372 (Miss. 1983); Huff v. Polk, 408 So.2d 1368, 1370 (Miss. 1982); Square D Co. v. Edwards, 419 So.2d 1327, 1328-29 (Miss. 1982).
AFFIRMED.
*44 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] See Adams, An Historical Perspective of the Mississippi Law Regarding Fixtures Prior to Introduction of the Uniform Commercial Code, 46 Miss.L.J. 907, 942-57 (1975).