# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CC-01304-SCT

*LEHMAN-ROBERTS COMPANY*

*v.*

*STATE HIGHWAY COMMISSION OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/18/92 |
| TRIAL JUDGE: | HON. W.O. DILLARD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | LUTHER S. OTT |
| | BOBBY N. TURNAGE, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: RICKEY T. MOORE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 5/9/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/30/96 |

**BEFORE DAN LEE, C.J., BANKS AND ROBERTS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This is an appeal and cross-appeal from the Hinds County Chancery Court of a $90,673.60 award against appellee/cross-appellant, the Mississippi State Highway Commission, for breach of contract. We conclude that Lehman-Roberts' suggested interpretation of the contract language is unreasonable and at odds with the plain wording of the contract and that Lehman-Roberts has been fully paid under its terms. Accordingly, we reverse and render.

I.

¶2. On June 15, 1989, Lehman-Roberts Company (Lehman-Roberts) and the Mississippi State Highway Commission (Commission) entered into a contract. The Contract required Lehman-Roberts to perform certain road overlay and random clearing on Highway 94 in Calhoun and Lafayette Counties. The Commission was to pay Lehman-Roberts $4,000 per acre for random clearing. There was an estimate of 82 acres of random clearing for the project.

¶3. The part of the contract that gives rise to this claim is:

> The limits of clearing shall be 60 feet (horizontal measure) from the centerline, both left and right of centerline, as directed by the engineer. *The area measured for payment for random clearing will be the acres actually cleared of trees and will not include any paved areas or any areas which do not contain trees.* [emphasis added].

A dispute arose early on during the performance of the work concerning the areas for which Lehman-Roberts would be paid under this provision. As a result of that dispute the Commission changed its method of marking the areas to be cleared. The work continued to completion.

¶4. By letter dated August 15, 1990, the Commission accepted the work and terminated the contract, releasing Lehman-Roberts for the overlaying and cutting the trees on approximately 20.31 miles of the project. The random clearing originally estimated at 82 acres was determined by the commission to encompass 101.929 acres and the amount of $401,716 was actually paid. Lehman-Roberts claims that the area cleared was 174.44 acres and sued for the balance due according to that claim.

¶5. The trial court's findings of fact are as follows:

> The Court finds that there is some ambiguity in the notice to the bidder No. 6316; however, the key words are controlled by the phrase "as directed by the engineer" and that the area measured for payment does not contain any areas which do not have trees thereon. The 12 feet of pavement from the centerline, plus the 12 feet from the edge of the pavement does not have trees thereon. The area for payment initially in the contract was to be as directed by the engineer from the tree line at the edge of the pavement outward to 60 feet from the centerline. Although the area to be cleared was from the centerline, the area for payment was to be calculated only on the area that contained trees; therefore, for the first 40 percent of the contract, the correct computation would be from the centerline extending out 60 feet, less 12 feet of pavement, less 12 feet of shoulder and slope to the tree line, or 36 feet of the designated area.

> The Court further finds from the evidence that there was a novation and new contract resulting from the October 5th meeting, but still, the key language as agreed by all concerned was to be as directed by the project engineer, Mr. Spence, who was in charge of setting flags. Also there was an accord and satisfaction when the calculations were remade and the 101.6 acres arrived at and apparently accepted by the parties.

¶6. In the court's Conclusion of Law, the court stated that the defendant is bound by the new agreement and that the new method of measurement was agreed on and carried out by Mr. Spence. The court also stated that the evidence proves that there was a satisfaction and accord, but such is an affirmative defense that must be pled by the defendant. The court then stated, "while pleadings may not mean much anymore, in this case the Court is of the opinion that they control the judgment to be entered in this case." The court then stated that it recognizes the rule that the contract should be construed strongly against the drafter and that it must be construed to determine the intent of the parties. The court then stated that following these rules, that the key words were "as directed by the engineer" and there could not be payment for any area cleared if there were no trees on it. The court then reduced the plaintiff's claim of 75.561 acres, based on 48 feet, by 25 percent, leaving a total acreage of 56.671. The court then stated that recovery is limited to

40 percent of that because of the "novation/new contract, accord and satisfaction, or whatever term is to be given."

¶7. The court then stated that "if the contractor did not agree subsequent to that time, then payment should not have been accepted on that basis or the work should not have gone forward if they were not in agreement." The total amount awarded Lehman-Roberts was $90,673.60. From this judgment, Lehman-Roberts ans the Commission both appeal.

II.

¶8. Lehman-Roberts contends that they are entitled to their interpretation of the contract. When dealing with contract interpretation, this Court has stated the following:

> The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standard. A court must effect a determination of the language used, not the ascertainment of some possible but unexpressed intent of the parties.

*Simmons v. Bank,* 593 So. 2d 40, 42-43 (Miss. 1992) (quoting *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987)). The *Simmons* Court also restated that "mere disagreement about the meaning of a contract clause does not make it ambiguous as a matter of law." *Id*. at 43. In analyzing this issue, this Court must seek the meaning most coherent in principle with the best justification which may be found for that language. *Id*.

¶9. The trial court's findings and conclusion are a bit confusing on this issue. The court stated that the clause was somewhat ambiguous and that it is aware of the rule that it should be construed in favor of the non-drafting party, however it then stated that the key words were "as directed by the engineer." It appears that the trial court allowed recovery for the first 40 percent because the engineer had directed clearing to the 60-foot limit and only placed flags behind the trees; then after the meeting, flags were placed all around the payment areas and that is what they were directed to clear.

¶10. Lehman-Roberts claims that it was required to clear a 60-foot zone, from the centerline of the roadway out to the 60-foot limit of clearing line, anywhere up and down the highway the engineer directed clearing. Lehman-Roberts interpreted the contract provisions as providing for payment for clearing the 60-foot zone, less the pavement which was specifically excluded from the payment. Lehman-Roberts also claims it understood that areas which "do not contain any trees," such as open fields, would not be designated by the engineer for clearing and Lehman-Roberts would not be required to clear these areas.

¶11. Lehman-Roberts surveyed the area and made a bid at $4,000 an acre for random clearing. Lehman-Roberts knew from the beginning that only 82 acres of random clearing had been estimated for the project. It claims, however, that if a portion of the project has trees located on it and it was directed to clear trees, no matter how many in number, it was to be paid for clearing from the edge of the pavement to the 60-foot limit. This is evidenced by the testimony of Tony Austin, when he stated that at a particular section there was one tree to be cleared. The Commission paid for a 4 by 4 feet area around that tree and Lehman-Roberts claimed that they should have been paid for 4 feet by 48 feet area.

¶12. The parties in this case clearly disagree with the pay amounts for random clearing. This disagreement, however, does not make the contract ambiguous. *Simmons,* 593 So. 2d at 43. Moreover, in seeking the meaning coherent in principle with the best justification with this language, Lehman-Roberts' interpretation is

not reasonable. The language of the clause first sets out what must be cleared, and that is what is directed by the engineer. The next part of the clause sets out what areas would be pay areas, and those are the areas not paved containing trees. Lehman-Roberts claims that the paved areas are specifically excluded, therefore they understand why they do not get paid for that 12 feet. The shoulder and slope are as well excluded if they do not contain trees. Lehman-Roberts would have the phrase "any areas which do not contain trees" mean that the engineer would not direct them to clear such area. Furthermore, Lehman-Roberts would have the phrase "payment for random clearing will be the acres actually cleared of trees" mean they are entitled to payment based on a 48-foot width, no matter how many trees were at that particular station. Lehman-Roberts would have the Commission pay for areas not actually cleared.

¶13. Where there is a dispute as to the meaning of a contract clause, a party's interpretation must be reasonable to warrant adoption. *Frazier v. Northeast Mississippi Shopping Center*, 458 So. 2d 1051, (Miss. 1984) (stating that a construction leading to an absurd, harsh or unreasonable result in a contract should be avoided, unless the terms are express and free of doubt . . . "It is the duty of courts to give to a contract that construction or interpretation, if possible, which will square its terms with fairness and reasonableness, each party toward the other . . . "). The Lehman-Roberts interpretation is unreasonable. The parties may have interpreted the clause differently, but it is not ambiguous. Thus, this claim is without merit.

¶14. The fact that the area to be cleared was marked differently after the October 1989 meeting is of no consequence. The trial court's conclusion that there was a novation is unsupported by the record. No novation was pled. Moreover, there is nothing in the record to suggest that the different marking method had an effect upon what was actually cleared. However marked, the contract clearly provided that there would be no payment for areas in which there were no trees. After the meeting, the Commission adjusted its estimate based upon its determination of what had in fact been cleared and was to be cleared. There is nothing to suggest that Lehman-Roberts has not been paid for all that it cleared under the contract as interpreted by the commission and measured by it. That is, there is no suggestion that Lehman-Roberts has not been paid for clearing all areas containing trees as measured within a reasonable distance of the trunks of the trees in question, whether that clearing occurred before or after the October 1989 meeting.

¶15. It follows that the judgment of the chancery court is reversed and rendered.

¶16. **AFFIRMED ON DIRECT APPEAL; REVERSED AND RENDERED ON CROSS-APPEAL. JUDGMENT VACATED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**