# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01048-SCT

*ONE SOUTH, INC.*

*v.*

*GEORGE F. HOLLOWELL, JR., JUNE H. WEATHERS AND WILLIAMS S. WEATHERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2006 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HAROLD H. MITCHELL, JR. |
| ATTORNEY FOR APPELLEES: | JEFFREY A. LEVINGSTON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | THE WASHINGTON COUNTY CIRCUIT COURT'S GRANT OF PARTIAL SUMMARY JUDGMENT IN FAVOR OF THE GUARANTORS, GEORGE F. HOLLOWELL, JR., JUNE H. WEATHERS, AND WILLIAM S. WEATHERS, AND AGAINST ONE SOUTH, INC., IS AFFIRMED; THE WASHINGTON COUNTY CIRCUIT COURT'S DENIAL OF ONE SOUTH, INC.'S MOTION FOR SUMMARY JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION - 09/06/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    One South, Inc., instituted an action against the guarantors on a lease agreement for the lease of certain nonresidential real property. After the lessee, Hollowell Mercantile

Company, Inc., missed two rental payments and filed for bankruptcy, One South regained possession of the property, but sought to have the lease agreement accelerated, with the guarantors to pay out the remaining portion of the lease agreement plus reasonable attorney fees. Under the assumption that One South had terminated the lease agreement by retaking possession of the property, the guarantors filed for partial summary judgment, asserting that since Hollowell Mercantile's obligations ceased under the lease agreement, the guarantors' obligations likewise ceased. After the trial court granted the guarantors' motion for partial summary judgment and, in essence, denied One South's motion for summary judgment, One South appealed to us. While we affirm the trial court's grant of the guarantors' motion for partial summary judgment, we find error in the trial court's denial, *in toto*, of One South's motion for summary judgment. Therefore, we affirm in part and reverse in part, remanding this case to the Washington County Circuit Court for an evidentiary hearing on the issue of the amount of reasonable attorney's fees to be awarded to One South.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     On October 15, 2001, Hollowell Mercantile, Inc., entered into a five-year lease for certain nonresidential real property with One South, Inc., the drafter of the lease. Under the terms of the lease, it was to expire on September 15, 2006. As President of Hollowell Mercantile, William S. Weathers signed the lease on behalf of Hollowell Mercantile. On the same day, the Appellees, George F. Hollowell, Jr., June H. Weathers, and William S. Weathers ("guarantors"), as shareholders of Hollowell Mercantile, signed a separate guaranty

2

agreement stating that they "jointly and severally, personally" guaranteed the obligations of Hollowell Mercantile under the lease agreement.

¶3.     Thereafter, Hollowell Mercantile made monthly rental payments of $4,000 through February 2004. In March 2004, Hollowell Mercantile failed to make its monthly rental payment. On May 1, 2004, Hollowell Mercantile filed for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Northern District of Mississippi. During the bankruptcy proceedings, One South was awarded $8,000 in administrative expenses for the period of May 1, 2004, through June 30, 2004. Because Hollowell Mercantile failed to assume or reject the lease agreement during the sixty days following the bankruptcy court's Order for Relief, the lease was deemed rejected pursuant to 11 U.S.C. § 365(d)(4).[1] On August 23, 2004, One South filed a Motion to Lift Stay and Abandon Property, and on September 23, 2004, the bankruptcy judge entered an order lifting the automatic stay and allowing One South to regain possession of the property.

¶4.     On February 1, 2005, One South filed suit against the guarantors in the Circuit Court of Washington County, seeking payment for two and one-half years of rental payments still remaining under the terms of the lease agreement as well as reasonable attorney's fees. On

---

[1]11 U.S.C. § 365(d)(4) reads:
>    If the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

February 8, 2006, One South filed a motion for summary judgment. Thereafter, on March 30, 2006, Hollowell Mercantile filed a motion for partial summary judgment, claiming that One South terminated the lease according to the provisions set out in Section 13.01 of the lease when it took possession of the property. Thus, the guarantors assert if they are liable at all, they are liable to One South only for the rental payments until September of 2004, minus the $8,000 already obtained by One South in the bankruptcy proceedings, for a total of $20,000.

¶5. On April 19, 2006, the Washington County Circuit Court entered an order granting the guarantors' motion for partial summary judgment and finding that the lease has terminated on September 23, 2004. As such, the circuit court declared that the guarantors had no further obligations to One South after September 23, 2004. Additionally, the circuit court disallowed the payment of reasonable attorney's fees by the guarantors because there was no express provision in the guaranty agreement requiring the payment of reasonable attorney's fees. Based on the circuit court's order, One South filed a Motion to Alter or Amend, or in the Alternative, For Relief From Judgment,[2] which the trial court denied on

---

[2]On April 19, 2006, the trial court entered an order entitled "Order Granting Defendants' Motion for Partial Summary Judgment." Although the trial judge acknowledged in this order that there had been a hearing on the "Plaintiff's and Defendants' Motions for Summary Judgment," the trial court, in this order, ruled only on the Defendants' motion for partial summary judgment. This omission would later cause One South to assert that the trial court had "remained silent as to One South's Motion for Summary Judgment, a silence that can only be interpreted within the context of the language of the final Order from the trial court to mean that One South's motion was denied." We agree with One South's interpretation of the trial court's failure to rule on One South's motion for summary judgment.

4

June 3, 2006. Thereafter, on June 12, 2006, One South filed its Notice of Appeal to this Court assigning four assignments of error: (1) Whether the trial court erred in finding the lease had terminated; (2) whether the trial court erred in not finding that Hollowell Mercantile continued to be in default of the lease; (3) whether the trial court erred in failing to hold the guarantors liable for the obligations of Hollowell Mercantile under the lease; and (4) whether the trial court erred in the amount of damages it awarded One South. We have combined and restated the issues for clarity in discussion.

## DISCUSSION

¶6.     One South contends that the trial court improperly granted partial summary judgment in favor of the guarantors. In reviewing a trial court's grant or denial of summary judgment, our well-established standard of review is *de novo*. ***Hubbard v. Wansley***, 954 So. 2d 951, 956 (Miss. 2007). That being said, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). Additionally,"[t]he evidence must be viewed in the light most favorable to the party against whom the motion has been made." ***Green v. Allendale Planting Co.***, 954 So. 2d 1032, 1037 (Miss. 2007) (quoting ***Price v. Purdue Pharma Co.***, 920 So. 2d 479, 483 (Miss. 2006)). "The moving party has the burden of demonstrating that [no] genuine issue of material fact[s] exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." ***Id.*** (quoting ***Howard v. City of Biloxi***, 943 So. 2d 751, 754 (Miss. Ct. App.

5

2006)). Partial summary judgment is also permissible under our rules, utilizing the same criteria for a grant or denial of a summary judgment and the same standard of review on appeal. *See Brown v. Credit Center, Inc.*, 444 So. 2d 358, 363 (Miss. 1984); Miss. R. Civ. P. 56(d).

## I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE LEASE HAD TERMINATED.

¶7.     One South contends that the trial court should not have granted the guarantors' motion for partial summary judgment, but instead should have granted its own motion for summary judgment. One South argues on appeal that the lease agreement between One South and Hollowell Mercantile did not terminate, as the trial court determined, on September 23, 2004, and thus, was in full force and effect until September 15, 2006, when the lease agreement actually expired by its terms. The guarantors argue, contrary to One South's assertions, that the trial court properly granted their motion for partial summary judgment. The guarantors assert that the trial court was correct in declaring the lease terminated when One South regained possession of the property.

¶8.     To support its assertions, One South cites to *Eastover Bank for Savings v. Sowashee Venture (In re Austin Development Co.)*, 19 F.3d 1077 (5th Cir. 1994), for the proposition that a lease "deemed rejected" in bankruptcy court does not equate to a termination. While *Austin* offers guidance in interpreting 11 U.S.C. § 365(d)(4) of the bankruptcy code (the section applicable to this case), and concludes that "a debtor's inaction in timely deciding to assume or reject a lease of nonresidential real property under § 365(d)(4), which leads to a

6

deemed rejection, does not effect a termination of that lease," the Fifth Circuit went further

and stated that, once a lease is deemed rejected, the debtor's bankruptcy estate has no

remaining interest in the outcome of the litigation concerning the lease, and that such issues

should be decided in state court by interpreting the contract provisions. *Austin*, 19 F.3d at

1083-84. Thus, we must look to the contract to determine if an actual termination occurred.

¶9.     Since the determination of whether One South's repossession of the property

terminated the lease agreement between One South and Hollowell Mercantile is a matter of

contract construction, we lay out the pertinent provision of the lease agreement below:

> **12.00 Bankruptcy-Insolvency**.  Tenant agrees that in the event (i) all or
> substantially all of Tenant's assets are placed in the hands of a receiver or
> trustee and such receivership or trusteeship continues for a period of sixty (60)
> days; or (ii) Tenant makes an assignment for the benefit of creditors or is
> finally adjudicated bankrupt; or (iii) Tenant institutes any proceedings under
> the Bankruptcy Act as the same now exists or may hereafter be amended, or
> under any other act relating to the subject of bankruptcy, including but not
> limited to any proceeding wherein Tenant seeks to be adjudicated bankrupt or
> to be discharged of its debts or to affect a plan of liquidation, composition,
> extension, or reorganization; or (iv) any involuntary proceeding is filed against
> Tenant under any such bankruptcy laws and such proceeding not be removed
> within ninety (90) days thereafter; then in any of such events, this Lease and
> any interest of Tenant in and to the Premises shall not become an asset in any
> of such proceedings, and in addition to any and all rights or remedies of
> Landlord hereunder or by law provided, the same shall be deemed an event of
> default under this Lease, and at the option of Landlord, Landlord may declare
> the term hereof ended and re-enter the Premises and take possession thereof
> and remove all persons therefrom, and Tenant shall have no further claim
> thereon or hereunder.
>
> **13.00 Defaults by Tenant**.  Should Tenant at any time be in default with
> respect to any rental payments or other charges payable by Tenant and should
> such default continue for a period of ten (10) days after written notice from
> Landlord to Tenant, or should Tenant be in default in the prompt and full
> performance of any other of its promises, covenants, or agreements herein

7

contained and should such default or breach of performance continue for more than a reasonable time (in no event to exceed sixty (60) days) after written notice thereof from Landlord to Tenant, specifying the particulars of such default or breach of performance, then the occurrence of any one or more of the foregoing events shall be an event of default under this Lease, and in addition to any or all other rights or remedies of Landlord herein and by law provided, Landlord may, at Landlord's option and without further notice or demand of any kind to Tenant or any other person, take any one or more of the following actions:

    a.    Declare the term hereof ended and re-enter the Premises and take possession thereof and remove all persons therefrom, in which event Tenant shall have no further claim thereon or hereunder; or

    b.    Perform or cause to be performed, on behalf and at the expense of Tenant, any or all of the undertakings or obligations as to which Tenant is in default, in which event Tenant shall pay to Landlord, upon demand, any costs or expenses incurred in performance of such undertakings or obligations, together with interest thereon; and the action of Landlord in performing such undertakings and obligations, or causing the same to be performed, shall not be deemed a curing of Tenant's default and Landlord shall thereafter be entitled to exercise any or all of Landlord's rights or remedies provided herein, or at law or in equity, as if such default remained uncured.

**13.01 Termination Upon Default**. Should Landlord elect to terminate this Lease pursuant to the provisions of Section 13.00 above, Landlord shall recover from Tenant as damages the amount of any unpaid rental or other payments due from Tenant which had been earned or accrued at the time or [sic] such termination.

¶10. We are reminded that "[t]he primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 110 (Miss. 2005) (quoting *Royer Homes*

8

*of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003)). In order to determine and record the intent of the contracting parties, we focus upon the objective language of the contract. *Id*. at 110-111. Additionally, concerning the construction of contracts, this Court has consistently stated:

> This Court has set out a three-tiered approach to contract interpretation. ***Pursue Energy Corp. v. Perkins***, 558 So. 2d 349, 351-53 (Miss. 1990). Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. [***Cooper v. Crabb***, 587 So. 2d 236, 241 (Miss. 1991). . . .] First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. ***Pursue Energy Corp***., 558 So. 2d at 352 (citing ***Pfisterer v. Noble***, 320 So. 2d 383, 384 (Miss. 1975)). We must look to the "four corners" of the contract whenever possible to determine how to interpret it. ***McKee v. McKee***, 568 So. 2d 262, 266 (Miss. 1990). When construing a contract, we will read the contract as a *whole*, so as to give effect to all of its clauses. ***Brown v. Hartford Ins. Co.***, 606 So. 2d 122, 126 (Miss. 1992). Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. ***Simmons v. Bank of Miss.***, 593 So. 2d 40, 42-43 (Miss. 1992). Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. *Id*. (citing ***Cooper***, 587 So. 2d at 241). On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." ***Pursue Energy Corp***., 558 So. 2d at 352. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. *Id*. "The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." ***Turner***, 799 So. 2d at 32; ***Cherry v. Anthony***, 501 So. 2d 416, 419 (Miss. 1987).
>
> Secondly, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. ***Pursue Energy Corp***., 558 So. 2d 352. Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. ***Leach v. Tingle***, 586 So. 2d 799, 801-02 (Miss. 1991) (citing ***Stampley v. Gilbert***, 332 So. 2d 61, 63 (Miss. 1976)). Finally, if the contract continues to

9

evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. [*Pursue Energy Corp.*, 558 So. 2d at 353]. It is only when the review of a contract reaches this point that prior negotiation, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract.

*Royer*, 857 So. 2d at 752-53 (emphasis added).

*Facilities, Inc.*, 908 So. 2d at 111.

¶11. Thus, looking at the "four corners" of the lease agreement, the language of the agreement is clear and unambiguous. Hollowell Mercantile defaulted on the lease agreement beginning in March 2004, by failing to make the requisite $4,000 monthly payment. Furthermore, by filing a Chapter 11 bankruptcy on May 1, 2004, Hollowell Mercantile placed the lease agreement in default. According to the plain language of the contract, upon default by the tenant, section 13.00 gave the landlord two options: (1) the landlord could terminate the lease agreement by declaring the term ended, and re-enter and take possession of the premises; or (2) the landlord could cause the tenant to perform its obligations and undertakings. By its actions, the landlord, One South, clearly elected to terminate the lease agreement by re-entering and taking possession of the premises.

¶12. Staying within the "four corners" of the unambiguous lease agreement, we note that section 13.01, entitled "Termination Upon Default," states, "Landlord shall recover from Tenant as damages the amount of any unpaid rental or other payments due from Tenant which had been earned or accrued at the time o[f] such termination." The lease agreement terminated on September 23, 2004, when the lease agreement was rejected and abandoned by the Bankruptcy Court because of the Motion to Lift Stay and Abandon Property filed by

10

One South. Thus, based on the clear language of section 13.01, damages were limited to "unpaid rental or other payments due from Tenant which had been earned or accrued at the time o[f] such termination."

¶13. Hollowell Mercantile was in default from March 2004 through September 2004, approximately seven months. Therefore, the remaining rent due to One South under the provisions of the lease was $4,000 a month for seven months, less the $8,000 administrative expense ordered by the Bankruptcy Court, which was paid on confirmation, for a total of $20,000. Because the damages are capped at $20,000, and Hollowell Mercantile remained in possession during the entire time that assessment of damages was applicable, the issue of mitigation by One South is moot.

¶14. However, One South argues that, although it repossessed the premises, it did not intend to terminate the lease. To support its contention, One South offers an affidavit, deposition, and live testimony of Gerald Abraham, One South's president. However, as discussed, *supra*, "[w]e are not at liberty to infer intent contrary to the words employed because the words employed are the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Facilities, Inc.*, 908 So. 2d at 114; *see Simmons*, 593 So. 2d at 42-43 (citing *Cooper*, 587 So. 2d at 241). "Only when an appellate court is unable to determine the parties' intent should extrinsic or parol evidence be reviewed." *Facilities, Inc.*, 908 So. 2d at 116 (citing *Pursue Energy Corp.*, 558 So. 2d at 353). Since the lease agreement is not ambiguous or subject to more than one reasonable interpretation, we do not

11

consider the affidavit, deposition, or Gerald Abraham's live testimony concerning One South's intent on termination.

¶15. We find that the trial court did not err in granting partial summary judgment in favor of the guarantors because, as a matter of law, according to the terms of the lease, One South terminated the lease and relieved Hollowell Mercantile from further liability when One South had the automatic stay lifted and regained possession of the property. As a result of Hollowell Mercantile being released from further liability, the guarantors' liability also ceased. The amount of damages owed to One South after termination is controlled and limited by the lease agreement. Therefore, the trial court also was correct in limiting damages.

¶16. For the reasons discussed, this issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN FAILING TO HOLD THE GUARANTORS LIABLE FOR REASONABLE ATTORNEY'S FEES.

¶17. In the trial court's order granting partial summary judgment in favor of the guarantors, the trial court stated, "[a]s the guaranty agreement contains no provisions for the collection of attorneys fee[s] from the guarantors this is hereby denied." Thus, One South contends the trial court erred by not reading the guaranty agreement together with the lease agreement and finding the guarantors liable for reasonable attorney's fees, in addition to the past-due rental payments. On the other hand, the guarantors assert that, without the guaranty agreement specifically obligating the guarantors to pay attorney's fees, the guarantors are not liable for attorney's fees.

12

¶18.    To support its contention in support of an award of attorney's fees, One South points

to the guaranty agreement signed by the guarantors on October 15, 2001.  The agreement

reads as follows:

> **FOR GOOD AND VALUABLE CONSIDERATION**, the undersigned
> shareholders of **HOLLOWELL MERCANTILE COMPANY, INC.** do
> hereby, jointly and severally, personally guarantee the obligations under the
> above and foregoing Lease Agreement.

The personal guaranty appears on the same page, directly below the signatures of the

signatories to the lease agreement.  The signatures of the individual guarantors appear

directly below the personal guaranty, and likewise on the same page as the signatures of the

signatories to the lease agreement.  Like the lease agreement, the guaranty agreement is a

contract, and a contract must be interpreted according to the four corners of the document

unless it is ambiguous.  Additionally, "under general principles of contract law, separate

agreements executed contemporaneously by the *same parties*, for the same purposes, and as

part of the same transaction, are to be construed together."  *Doleac v. Real Estate*

*Professionals, LLC*, 911 So. 2d 496, 506 (Miss. 2005) (quoting *Neal v. Hardee's Food*

*Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) ("although the parties used multiple agreements

to delineate their relationship, each agreement was dependant upon the entire transaction. .

. . The individual agreements were integral and interrelated parts of the one deal.")).  By

construing the contracts together, the intent of the parties and the meaning of the two

documents must be determined from the entire transaction.  That being said, the only logical

inference is that the intent of the parties and the meaning of the two documents should not

be construed from isolated portions of the contracts. Therefore, the trial court erred in its finding that, since the guaranty agreement did not contain specific language addressing the payment of attorney's fees, an assessment of attorney's fees against the guarantors was inappropriate.

¶19. According to the guaranty agreement, the guarantors are liable to the extent that Hollowell Mercantile would be liable. Thus, we look at the lease agreement to determine if Hollowell Mercantile would be liable for attorney's fees. As to attorney's fees, the lease agreement states:

> **4.00 <u>Rental Payments</u>**. . . . In addition, if any such rental or other payment is not received by Landlord by the due date, Tenant agrees that it shall reimburse Landlord for all costs and expenses incurred by Landlord in collection of same (including, but not limited to Landlord's reasonable attorneys' fees and expenses).

Additionally, section 18.01 states:

> This Lease (including any Rider attached hereto) contains the entire agreement between the parties hereto, and the same may not be altered, varied, or modified in any way except in a writing making specific reference to this Lease and signed by the parties hereto. The terms and provisions of any Rider attached hereto and executed by the parties are incorporated herein and constitutes part of this Lease.

¶20. Since the lease agreement and the guaranty agreement were executed at the same time and by the same parties as part of the same transaction, the two documents are to be construed as one instrument. Under the instrument, the guarantors are liable for One South's reasonable attorney's fees and expenses for collecting the $20,000 past-due rental payments. Therefore, we find this issue to have merit, and we are thus compelled to remand this issue

14

to the trial court to conduct an evidentiary hearing on the amount of reasonable attorney's fees and expenses to be assessed against the guarantors and in favor of One South.

## CONCLUSION

¶21.    The trial court properly granted partial summary judgment in favor of the guarantors on One South's allegations that the guarantors were liable for rental payments for the entire lease term.   The lease agreement, by its terms, terminated when One South declared Hollowell Mercantile in default and repossessed the premises.  As guarantors, George F. Hollowell, Jr., June H. Weathers, and William S. Weathers were liable only to the extent that Hollowell Mercantile could be found liable.  Thus, once One South terminated the lease agreement with Hollowell Mercantile and regained possession of the property, no further rental payments accrued under the terms of the lease agreement.  Therefore, we affirm the trial court's grant of partial summary judgment in favor of the guarantors.  However, as to One South's motion for summary judgment, we reverse the trial court's denial of reasonable attorney's fees and expenses and remand this issue to the Circuit Court of Washington County for an evidentiary hearing to determine reasonable attorney's fees and expenses the guarantors owe One South for collecting the $20,000 in past-due rental payments.

¶22.    **THE WASHINGTON COUNTY CIRCUIT COURT'S GRANT OF PARTIAL SUMMARY JUDGMENT IN FAVOR OF THE GUARANTORS, GEORGE F. HOLLOWELL, JR., JUNE H. WEATHERS, AND WILLIAM S. WEATHERS, AND AGAINST ONE SOUTH, INC., IS AFFIRMED; THE WASHINGTON COUNTY CIRCUIT COURT'S DENIAL OF ONE SOUTH, INC.'S MOTION FOR SUMMARY JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

15

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**