997 So.2d 238 (2008)
POTOMAC INSURANCE COMPANY OF ILLINOIS, Appellant
v.
Mary Gale ADAMS, Individually and on behalf of her minor children, Mary Catherine Adams and Andrew Edwards Adams, Appellee.
No. 2006-CA-01852-COA.
Court of Appeals of Mississippi.
December 9, 2008.
Brenda B. Bethany, Gerald L. Kucia, Jackson, Attorneys for Appellant.
Hiawatha Northington, Randall A. Smith, Edward Gothard, Attorneys for Appellee.
Before MYERS, P.J., IRVING and CARLTON, JJ.
IRVING, J., for the Court.
¶ 1. This appeal arises from a lawsuit filed by Mary Gale Adams, individually and on behalf of her minor children, against Potomac Insurance Company of *239 Illinois (Potomac) and other entities.[1] Adams filed the suit in an attempt to recover under her employer's underinsured motorist (UIM) insurance, which was provided by Potomac. After discovery, the Washington County Circuit Court granted summary judgment to Adams, finding that the policy in question covered Adams. Aggrieved, Potomac appeals and asserts three contentions of error, which we summarize as whether the court correctly decided that Adams was covered under her employer's insurance.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On May 1, 1997, Adams was involved in a motor vehicle accident near Greenville, Mississippi that left her with substantial injuries and medical expenses. The extent of those expenses was not clear from the record, but Adams's expenses presumably exceed the fifty thousand dollars in coverage that was available from the individual who caused the accident. At the time of the accident, Adams, a Louisiana resident, was in Mississippi on business for her employer, Careington International (Careington). The vehicle in which Adams was driving was rented in Jackson and paid for with a Careington corporate credit card.
¶ 4. After the accident, Adams attempted to get compensation for her injuries from Potomac, with which Careington had its automobile insurance coverage. Potomac refused to compensate Adams because Potomac believed that Adams was not covered by Careington's UIM policy. Adams filed suit against Potomac on April 28, 2000. On October 20, 2004, the circuit court granted summary judgment on Adams's behalf, finding that she was covered under Careington's insurance at the time of her accident. On September 5, 2006, that judgment was converted into a final judgment upon motion by Potomac.
¶ 5. Additional facts, as necessary, will be related during our analysis and discussion of the issue.

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 6. We review a court's grant of summary judgment under a de novo standard of review. Franklin County Mem'l Hosp. v. Miss. Farm Bureau Mut. Ins. Co., 975 So.2d 872, 874(¶ 11) (Miss.2008). "The moving party shall be granted judgment `if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Callicutt v. Prof'l Servs. of Potts Camp, Inc., 974 So.2d 216, 219(¶ 9) (Miss. 2007)).
¶ 7. The insurance contract in question is governed by Mississippi rules of contract interpretation. The Mississippi Supreme Court has explained as follows:
This Court has set out a three-tiered approach to contract interpretation. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 351-53 (Miss.1990). Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. [Cooper v. Crabb, 587 So.2d 236, 241 (Miss.1991)....] First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. Pursue Energy Corp., 558 So.2d at 352 (citing Pfisterer v. Noble, 320 So.2d 383, 384 (Miss.1975)). We *240 must look to the "four corners" of the contract whenever possible to determine how to interpret it. McKee v. McKee, 568 So.2d 262, 266 (Miss.1990). When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. Brown v. Hartford Ins. Co., 606 So.2d 122, 126 (Miss.1992). Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Simmons v. Bank of Miss., 593 So.2d 40, 42-43 (Miss.1992). Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. Id. (citing Cooper, 587 So.2d at 241). On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." Pursue Energy Corp., 558 So.2d at 352. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. Id.

One South, Inc. v. Hollowell, 963 So.2d 1156, 1162(¶ 10) (Miss.2007) (citation omitted). We find that the contract in this case is unambiguous on its face. Thus, we need not go beyond the four corners of the insurance contract in reaching our decision.
¶ 8. The UIM portion of Careington's insurance policy states that the covered automobiles for purposes of the UIM provisions are "any auto[s] owned" by Careington. It is undisputed that Adams was not in a vehicle literally owned by Careington at the time of her accident. However, section C of the UIM coverage states that any person "occupying a covered auto" is considered an insured, and section F states that a "covered auto" is an automobile "owned or leased by you" or an automobile used as a substitute for a damaged or stolen automobile.
¶ 9. Potomac contends that section F does not apply to Adams's rental vehicle because she was not in a vehicle owned or leased by Careington at the time of the accident. We disagree. The vehicle in question was rented solely for conducting Careington's business. Furthermore, the rental was paid for with a corporate credit card issued in Adams's name. Clearly, the vehicle was rented by Careington on behalf of its employee. The first definition found for "lease" in Black's Law Dictionary reads: "A contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange for consideration, usu. rent." Black's Law Dictionary 405 (2nd pocket ed.2001). Clearly, a car rental agreement would constitute a lease.
¶ 10. Potomac has provided no explanation for why Careington would not be considered the lessee of the rental vehicle in question. Although the rental contract was filled out with Adams's name listed, it was clear that Careington was the true lessee of the vehicle. The car was rented solely for Careington's business purposes, and the rental was paid for entirely by Careington. As such, the vehicle was "owned or leased" by Careington. According to the definition of a "covered auto" in section F, the rental vehicle was a covered automobile because it was leased by Careington. The same UIM provision further states that any person "occupying" a covered automobile was covered for insurance purposes. Since Adams was occupying a vehicle leased by Careington, she was occupying a covered automobile and was therefore covered under the insurance contract with Potomac.
¶ 11. Accordingly, we find that the circuit court correctly granted summary judgment on Adams's behalf.
*241 ¶ 12. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] All of the defendants except Potomac have been dismissed from the lawsuit.