**Fox Lake Hills Property Owners Association, Plaintiff-Appellee, v. Fox Lake Hills, Inc., Defendant-Appellant.**

**Gen. No. 69–38.**

Second District.

February 26, 1970.

Rehearing denied and supplemental opinion March 31, 1970.

John F. Grady, of Waukegan, Michael B. Roche and Richard W. Burke, of Chicago, for appellant.

William E. Hartnett, of Waukegan, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

This appeal by Fox Lake Hills, Inc., a subdivider, challenges the order of the trial court which declared in favor of Fox Lake Hills Property Owners Association that the subdivider was, alternatively, not empowered to amend subdivision restrictions and covenants under claimed reserved powers, or, if empowered, was estopped from exercising its power to amend.

The defendant subdivider in 1954 opened up "Fox Lake Hills" which was in parts separated by about one mile. One portion of the subdivision is called the "Chesney Area," another the "Busse Area." There were es-

sentially similar covenants, conditions, restrictions and easements in both areas, and each area was subject to the following provision:

> " '(16) Every purchaser of a lot within the subdivision by the payment of the purchase price and acceptance of a deed therefore, agrees for himself, his heirs and assigns to become a member of the Fox Lake Hills Property Owners Association, a not for profit corporation. Every purchaser of a lot within the subdivision by the payment of the purchase price and acceptance of a deed therefor further agrees for himself, his heirs and assigns, to pay to the Fox Lake Hills Property Owners Association the assessments levied by said Association for the purpose and purposes for which it is organized, not to exceed $5.00 per annum for each unimproved lot and $10.00 per annum for each improved lot, said assessments to be payable to the treasurer of said Association at its office. In the event of default in payment of aforesaid assessment every such purchaser further agrees, authorizes and empowers the said Association, its officers, successors and assigns, to assert a lien against his or her lot and to file on behalf of said Association a Notice of Lien with the Office of the Recorder of Deeds of Lake County, Illinois, for the amount of said lien, which lien shall be and remain at all times inferior, junior and subordinate to the lien of any indebtedness secured by mortgage or trust deed.' "

Additionally, in the Chesney Area covenants and conditions, the following appeared:[1]

---

[1] It appeared that the reserved power was not in the Busse covenants and conditions for the reason that the mortgage company providing the financing in the Busse area insisted that it be deleted.

142

" '(20) Fox Lake Hills, its successors and assigns, shall have the right from time to time hereafter to alter, change, modify, revoke or delete, in whole or in part, any or all of the restrictions, covenants and conditions above set forth and contained in the Declaration of Restrictions filed of record in the Recorder's Office, Lake County, Illinois, without the approval or consent of any property owner or owners or who may hereafter become owners of property in said subdivision.' "

The reservation of power in the subdivider was in the general recorded covenants and also repeated in hundreds of separate contracts of sale between the subdivider and individual lot purchasers.

At a meeting of lot owners on October 14th, 1956, an attorney for the subdivider explained the differences between the restrictions in the Chesney and Busse contracts and led the discussion about the forming of a Property Owners Association. There was extensive discussion that there could be one or two associations. At a subsequent meeting, in 1957, the lot owners decided in favor of one association with weighted voting.[2]

On December 1st, 1959, the subdivider conveyed the parks and beaches in both areas to the plaintiff Association.

Subsequently the Chesney area owners became dissatisfied with the single association, claiming that their dues were not being equitably used to maintain the parks and beaches in the Chesney area. In the latter part of 1962, the Chesney lot owners approached the subdivider and asked for a change in the Chesney restrictions so that they could have their own association. On the virtually unanimous petition of the lot owners in the Ches-

---

[2] The Busse area was given greater voting strength on the basis of the fact that there were 600 lots in that area and 400 lots in the Chesney area.

ney area, the subdivider granted the request and exercised its reserved right under paragraph 20 above by amending the restriction contained in paragraph 16 above to release the Chesney owners from their future obligation to pay dues to the plaintiff Association. The recorded document accomplishing this was held void by the order below.[3]

The complaint prayed that the subdivider's change of restrictions be declared ineffective and that the defendant corporation pay the dues to the plaintiff on the Chesney area lots. The order appealed from held the reserved power of amendment exercised under paragraph 20 was invalid and the defendant estopped from using it.

The defendant argues that the relief granted was improper because neither the record owners of the Chesney lots nor the Chesney Shores Property Owners Association were made parties, and that their interests made them necessary parties; that the order was inequitable in that it worked a hardship on the Chesney owners with no benefit to others; that the right to revoke or delete any and all restrictions without the consent of the individual lot owners was properly reserved by the subdivider, and should have been held enforceable against the plaintiff Association suing as a third-party beneficiary. The subdivider finally argues that the plaintiff Association has failed to prove the elements of equitable estoppel to bar the use of an admittedly legal reserved power.

■■ The general proposition of law that all persons having any substantial legal or beneficial interest in the subject matter of litigation must ordinarily be joined as parties is undisputed. Ragsdale v. Superior

---

[3] A second document was recorded changing restriction 16 to require the Chesney owners to become members of and to pay dues in the future to the Chesney Shores Property Owners Association but the order below did not purport to affect this.

Oil Co., 40 Ill2d 68, 71, 237 NE2d 492 (1968) ; Georgeoff v. Spencer, 400 Ill 300, 302, 79 NE2d 596 (1948) ; Gaumer v. Snedeker, 330 Ill 511, 515, 162 NE 137 (1928) ; Burnham v. Roth, 244 Ill 344, 353, 91 NE 472 (1910). It is also undisputed that if an omitted interest is already effectively represented by parties to litigation, it need not be joined. Cales v. Dressler, 315 Ill 142, 149, 146 NE 162 (1925).

█ In the view which we have taken, neither the Chesney Association nor the owners of the lots in the Chesney area are necessary parties. It was the defendant subdivider's act alone, requiring no consent by the express terms of the recorded covenants and restrictions, in attempting to exercise the reserved power that the judgment below struck down.

██ The particular covenants with which we are here concerned, we believe to have been intended for the benefit of the subdivider personally. The express reservation of the power to revoke the restrictions and conditions expressed in the recorded "Declaration of Restrictions and Conditions" viewed in its entirety, tends to negative any suggestions that the restrictions were imposed with the intention of creating a general or neighborhood plan of development for the benefit of all owners in the area. Generally, such reserved powers are construed as personal covenants which can be exercised only by the one who imposes the restriction, particularly when the power may be exercised by its terms without the consent of property owners. See 4 ALR3d 573, 574, Annotated. There is some implication of this intent in the unilateral act of the defendant in deleting the reserve power clause in the Busse area contracts.

█ The essential intent and purpose of the reservation by the subdivider of the power to change the covenants and other promises respecting the use of the land appears on the whole record to be to protect the subdivider in the salability of its remaining lots. While

145

it appears never to have been contemplated that the particular covenants with respect to the use of common parks and beaches would be subject to extinguishment by the exercise of such reserved power, no attempt is here involved to deprive any lot purchaser of such use. The promises incidental to such use, that is, the formation of an association or associations to maintain these common areas and to deal with common problems of a subdivision are incidental to the covenants to provide the common areas. As to such incidental provisions, the subdivider retained the power to transfer title to the common areas specifically under a paragraph 13 which expressly provided for a conveyance to the Fox Lake Hills Association.[4]

█ The testimony with respect to the organizational meeting, held prior to recording the declaration, showed that the subdivider had no personal interest in the form of the association, or whether there would be one or two associations. This decision was to be solely that of the purchasers who were represented at the meeting. Once the wishes of the purchasers were demonstrated by the designation and creation of the Fox Lake Hills Association for all areas of the subdivision, the subdivider had no further substantive interest to protect in the reservation of his powers, in this respect. The later formal conveyance of the title to the common

---

[4] (13) All beaches, parks and piers in said real estate shall not be used in any manner by the general public but shall be restricted solely to use by the owners and occupants of the lots in said real estate, their families and guests, provided:

(a) That Fox Lake Hills, Inc., its successors or assigns, at any time hereafter reserve the right when owners of lots in said real estate have organized and created a property owners' association for governing and regulating the affairs of the subdivision and when the same has been approved by Fox Lake Hills, Inc. to assign, transfer and set over unto such property owners' association all or any portion of the right, title and interest of the undersigned in and to said beaches, parks and piers.

areas to the chosen association is consistent with this view. We believe that this conveyance satisfied the purpose of the reservation of powers as it applied to the incidental promises with respect to the vehicle by which the areas were to be maintained. There is no sufficient wording in section 20, in our view, when the entire series of covenants and restrictions are read with the record, to support a conclusion that the subdivider intended to retain the continuing right to detail changes or designate additional associations. This right was not at all essential for the subdivider's protection or for his benefit.

There was no evidence that the subdivider ever misrepresented the nature of the covenants or his general power of revocation as applicable only to the Chesney area and not to the Busse area, and we do not feel that an estoppel can be based on this theory. However, estoppel may be based upon nonverbal acts inconsistent with the intent to enforce stated obligations. See ALI Reports, Restatement of the Law of Property, § 559, at page 3299.

The transfer of title to Fox Lake Hills Association, after the purchasers had chosen it as its sole association, was inconsistent with the intent to enforce the general reserved powers in that limited field thereafter.

A contrary result would create the anomalous position of having title to all of the common areas in one association, and the duty to maintain and collect assessments for the maintenance of a portion of the areas in another association which could not exercise physical control over the properties involved in the common easement. Certainly the Chesney owners are entitled to have their payments properly applied, but they are not without remedy against the Fox Lake Hills Association based on such premise. That is not involved in this suit. The payments which the Chesney owners have made to the Chesney Association are also subject to recovery

by the Chesney owners and may be applied so that the Chesney owners will not be damaged by having lost the payments innocently made to a second association.

The judgment below is affirmed.

Affirmed.

DAVIS, P. J. and MORAN, J., concur.

## SUPPLEMENT TO OPINION UPON DENIAL OF PETITION FOR REHEARING

The defendant, Fox Lake Hills, Inc., in its Petition for Rehearing has requested a clarification of the last sentence of the opinion,

"The payments which the Chesney owners have made to the Chesney Association are also subject to recovery by the Chesney owners and may be applied so that the Chesney owners will not be damaged by having lost the payments innocently made to a second association.",

relative to the status of payments made by the Chesney owners which have been properly applied for the maintenance of the public areas in the Chesney area.

We, therefore, supplement the opinion by the addition of the following paragraph:

Further, to the extent annual payments so made to the Chesney Association have already been properly applied to expenses which otherwise would have been borne by the Fox Lake Hills Association, the Chesney owners are entitled to an offset against any annual payments claimed from them by the Fox Lake Hills Association.

and deny the Petition for Rehearing.

148