No. 3--97--0230

_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 1998

BOARD OF MANAGERS OF THE ) Appeal from the Circuit Court

MEDINAH ON THE LAKE ) for the 18th Judicial Circuit,

HOMEOWNERS ASSOCIATION, ) DuPage County, Illinois 

Plaintiff/ )

Counter-Defendant, )

)

v. )

)

BANK OF RAVENSWOOD as Trustee )

under Trust No. 25--10165, ) No. 90--L--1198 

et al., )

Third Party Plaintiff/ ) 

Appellant, ) 

) 

v. )

)

120 NORTH LAKEVIEW DRIVE )

CONDOMINIUM BUILDING, et al., ) Honorable 

Third Party Defendants/ ) Robert Kilander

Appellees. ) Judge, Presiding

_________________________________________________________________

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

At issue is whether a purchaser of real property can develop property as an assignee of a declarant of a planned unit development (PUD) when it purchased the property through a foreclosure sale and did not receive a written assignment of rights.  Based on the intent of the parties, we hold that the purchaser, plaintiff Bank of Ravenswood (Ravenswood), is a valid 
successor and assignee of the declarant and the developer.  Accordingly, we reverse and remand. 

FACTS

In 1974, the Village of Bloomingdale approved a PUD of four lots in the Medinah on the Lake Subdivision.  Heritage Bank of Addison (Heritage Bank) held title to the lots as trustee in trust, and recorded a declaration of covenants, conditions and restrictions (declaration).  A.P. Ross Enterprises, Inc. (A.P. Ross) was the sole beneficiary of the trust.

The declaration defined the term "developer" as A.P. Ross "and its successors and assigns," and the term "declarant" as Heritage Bank as trustee in trust "and its successors and assigns."  The declaration's preamble provided that the development tract would be subject to all covenants and restrictions set forth in the declaration and that these covenants ran with the property.  It also stated that the developer planned to construct a residential community containing 360 residential units.  Article II of the declaration declared that a common area would be developed for use as a clubhouse, swimming pool, tennis courts and miniature golf course.  At the time of this appeal, the common area remained undeveloped.  Article XIII of the declaration stated, in part, that "[t]he Provisions of the declaration shall be liberally construed to effectuate its purpose for creating a uniform plan of operation for a first-class development."  

According to the PUD, a structure containing 120 residential units was to be constructed on each of three of the four lots.  To fund the development, Heritage Bank as trustee executed and delivered a note to Exchange Bank for $850,000.00.  A.P. Ross guaranteed the note and signed a collateral agreement assigning 100% beneficial interest in the Heritage Bank trust to Exchange Bank upon default.  After developing lot two, known as Lakeview Condominium (Lakeview), Heritage Bank and A.P. Ross became insolvent, and the property was purchased by Exchange Bank through a foreclosure proceeding.  Eventually Ravenswood Bank acquired the three undeveloped lots and held title as trustee.

Subsequently, the homeowners association created pursuant to the declaration filed suit against Ravenswood to recover part of the operating expenses for maintenance of the common areas.  Ravenswood filed a third-party complaint against Lakeview.  In response to a motion for summary judgment filed by Lakeview, the trial court ruled that Ravenswood was not the declarant or the developer and thus had no right to develop or erect any structure on the property.  Partial summary judgment was entered in favor of Lakeview and Ravenswood appeals.

             
STANDARD OF REVIEW

Summary judgment is a drastic means of ending litigation. 
Bellerive v. Hilton Hotels Corp.
, 245 Ill. App. 3d 933, 615 N.E.2d 858 (1993).  Therefore, it should only be granted when the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 
Thompson v. Green Garden Mutual Insurance Co.
, 261 Ill. App. 3d 286, 633 N.E.2d 1327 (1994).  This court's review of an order granting summary judgment is 
de
 
novo
. 
Johnson v. Owens-Corning Fiberglass Corp.
, 284 Ill. App. 3d 669, 672 N.E.2d 885 (1996).  

DISCUSSION

The sole issue on appeal is whether the trial court erred in determining that Lakeview was entitled to judgment as a matter of law.  

The rights to construct and maintain structures reserved by a declarant or a developer are personal rights. 
Fairways of County Lakes Townhouse Ass'n v. Shenandoah Development Corp.
, 113 Ill. App. 3d 932, 447 N.E.2d 1367 (1983).  Personal rights are those rights that can only be exercised by the one who created and imposed the restrictions.  
Fox Lake Hills Property Owners Ass'n, v. Fox Lake Hills, Inc.
, 120 Ill. App. 2d 139, 256 N.E.2d 496 (1970).  Because these rights are reserved by the creator, personal rights do not run with the land. 
Fairways
, 113 Ill. App. 3d at 936, 447 N.E.2d at 1370.  
Furthermore, the powers reserved by a declarant or a developer in a declaration, including the right to develop, can only be exercised by those parties specifically mentioned, or their successors or assignees. 
Toepper v. Brookwood Country Club Road Ass'n
, 204 Ill. App. 3d 479, 561 N.E.2d 1281 (1990).  

Rights as a successor accrue when there is a consolidation or merger of two or more entities, and the purchaser is merely a continuation of that entity. 
Fairways
, 113 Ill. App. 3d at 937, 447 N.E.2d at 1370; 
Johnson v. Marshall & Huschart Machinery Co
., 66 Ill. App. 3d 766, 384 N.E.2d 141 (1978).  An assignee's rights are established when the assignor transfers an identifiable property, right, or claim to the assignee. 
In re Estate of Martinek
, 140 Ill. App. 3d 621, 488 N.E.2d 1332 (1986).

An assignment of a right is a manifestation of the assignor's intention to transfer a particular right by which the assignor's right to performance is terminated in whole or in part, and the assignee acquires the right. Restatement (Second) of Contracts § 317(1)(1981)
; 
Season Comfort Corp. v. Ben A. Borenstein Co.
, 281 Ill. App. 3d 648, 655 N.E.2d 1065 (1995).  The creation and existence of an assignment is determined by the intent of the parties. 
Service Adjustment Co., Inc. v. Underwriters at Lloyd's of London
, 205 Ill. App. 3d 329, 562 N.E.2d 1046 (1990).  In the absence of an applicable statute, the manifestation of intent necessary for a valid assignment need not be in writing. 4 Corbin, Contracts § 879 (1963).  When the assignment has not been reduced to writing, the parties' intentions must be determined based upon the instruments executed as well as the surrounding circumstances. 
Rivan Die Mold Corp. v. Stewart-Warner Corp.
, 26 Ill. App. 3d 637, 325 N.E.2d 357 (1975).  Once established, an assignment places the assignee into the shoes of the assignor. 
Martinek
, 140 Ill. App. 3d at 629-30, 488 N.E.2d at 1337.   

Initially, Ravenswood asserts that the declaration filed by Heritage Bank constitutes a restrictive covenant running with the land.  Thus, it has the right to develop the property.  

The language of the declaration reserved certain rights and obligations to the developer and the declarant and their "successors and assigns."  This reservation established a personal right in the declarant.  Once title passed from the hands of Heritage Bank to a purchaser, the power to develop the lots could not be exercised by the purchaser without a succession or an assignment. See 
Fox Lake Hills
, 120 Ill. App. 2d at 145, 256 N.E.2d at 499.  Therefore, Ravenswood does not possess the power to develop the lots unless it received the developer's rights as a successor or an assignee.

Ravenswood asserts that it is both an assignee and a successor of the declarant's and the developer's rights, giving it the right to develop the remaining lots.  Lakeview asserts that Ravenswood does not possess the rights of an assignee, because the Bank of Ravenswood does not possess a written assignment of interest from Heritage Bank or the developer, nor a successor because the banks did not engage in a merger. 

We 
disagree with the contention that the Bank of Ravenswood is not an assignee.  While a written assignment is preferable, we are not inclined to find that an effective assignment of rights must be in writing.  Instead, when the intention of the parties to assign property rights is manifested in an executed instrument and the surrounding circumstances, the transfer of some identifiable property to the assignee will create an assignment. See 
Martinek
, 140 Ill. App. 3d at 629, 488 N.E.2d at 1337 (it is well-established that no particular words are necessary to create a valid assignment).    

Here, the declaration provides that the declarant and the developer planned to build a total of 360 residential units and the PUD provided that 120 units would be constructed on each lot.  The developer also agreed to provide the residence with a swimming pool and other recreational facilities on the designated common areas lot.  Then, before the development plans were fully realized, the declarant filed bankruptcy and the development corporation ceased to exist.  Taking Lakeview's argument to its logical conclusion, the lots must now remain vacant for lack of a developer.  But after a detailed review of the record, we find this manifestation of intent is not supported by the record.

Exchange Bank was granted a security interest in the beneficial interest of the Heritage Bank trust.  According to the terms of the beneficial interest collateral agreement, A.P. Ross, as beneficiary of the trust and guarantor of the note, assigned all its rights powers and interest under the trust, without limitation, as security.  Upon default, Exchange Bank purchased the lots and its own collateral as trustee of the Heritage Bank trust agreement.  The subsequent conveyances by deed in trust provided that the successors in trust were fully vested with all the title, estate, rights and powers of its predecessor in trust.  Thus, it was the intent of each subsequent purchaser of the lots to purchase all the rights and obligations enjoyed by Heritage Bank as the declarant and A.P. Ross as the beneficiary developer.  Accordingly, based on the intent of the parties as articulated in the mortgage agreement and the deeds in trust, we hold that Ravenswood is an assignee of the declarant and the developer. 

We also find that Ravenswood has the right to complete development of the condominium project as a successor.  Clearly Ravenswood is not a successor under the common law definition of a successor. See Fairways, 113 Ill. App. 3d at 937, 447 N.E.2d at 1370.  However, under the circumstances of this case, we think a statutory analysis is more appropriate.  

In Fairways 113 Ill. App. 3d 932, 447 N.E.2d 1367, and Fox Lake Hills, 120 Ill. App. 2d 139, 256 N.E.2d 496, the court held that a purchaser of title did not acquire the right to develop the purchased property as a successor unless the purchaser was a continuation of the prior titleholder.  Both cases examined only the common law prerequisites for a successor, which are derived from common law principles of corporate law.  Neither case reviewed or analyzed the definition of a "developer" under the Illinois Condominium Property Act (Act), 765 ILCS 605/1 et seq. (West 1996).   Section 2 of the Act states:

"'Developer' means any person who submits property legally or equitably owned in fee simple by the developer, ***, to the provisions of this Act, *** including any successor or successors to such developers' entire interest in the property other than the purchaser of an individual unit." 765 ILCS 605/2(q)(West 1996).

The historical and practice notes to this section indicate that the definition is much broader than a person who develops or builds a building. 765 ILCS Ann. 605/2(q), Historical & Practice Notes, at 16-17 (Smith-Hurd 1993).  A successor "includes  a lender who succeeds to a developer's interest either by foreclosure or otherwise." 765 ILCS Ann. 605/2(q), Historical & Practice Notes, at 17 (Smith-Hurd 1993).  Although historical and practice notes are not binding on this court, they can be used as persuasive authority. Maercker Point Villas Condominium Ass'n v. Szymski, 275 Ill. App. 3d 481, 655 N.E.2d 1192 (1995); Litvak v. 115 Harbor Drive Condominium Ass'n, Inc., 224 Ill. App. 3d 220, 614 N.E.2d 190 (1993). 

In a foreclosure proceeding, the purchaser of the collateral at the public sale takes title to the property subject to all prior liens and encumbrances. 
South Side Bank & Trust Co. v. Sherlock Homes, Inc.
, 6 Ill. App. 2d 138, 126 N.E.2d 742 (1955).  It follows that the buyer also purchases the rights and obligations of the debtor as a successor owner. See 
Village of Orland Park v. First Federal Savings & Loan Ass'n of Chicago
, 135 Ill. App. 3d 520, 481 N.E.2d 946 (1985)(bank ruled successor owner and held responsible for construction costs for improvements after purchasing property through foreclosure sale); see also 
St.Paul Federal Bank For Savings v. Wesby
, 
149 Ill. App. 3d 1059, 501 N.E.2d 707 (1986)(purchaser at foreclosure took interest in property subject to condominium association's declaration and bylaws filed before owner purchased property).  

In this case, the notes provide a persuasive argument that the legislature intended to include entities not contemplated under the common law prerequisites for a successor in the statutory definition of a "developer".  The record reveals that the Bank of Ravenswood obtained the property in question at a foreclosure sale after Heritage Bank and the developer became insolvent.  Through the sale, Ravenswood acquired the original developer's rights and obligations to complete construction of the condominium project.  Thus, Ravenswood became a successor developer.

We are mindful in reaching this decision that there are policy implications when the corporate law definition of a "successor" is applied outside its original context to the area of condominium law.  If commercial lenders are precluded from acquiring the development rights necessary to complete condominium projects through foreclosure proceedings, the availability of credit will be greatly diminished.  Conversely, the cost of such credit will soar as lenders seek to be compensated for the greater risk and potential losses they face when financing these projects.  These changes would seriously undermine the construction of new condominium units in Illinois.  Our finding that Ravenswood is a successor developer pursuant to the Act, thus, has practical as well as legal significance.

Last, Lakeview contends that consideration of the purchaser's intent surrounding the issue of an assignment is contrary to the law and should not be included in our analysis.  In support of this contention they rely on 
Fairways
, 113 Ill. App. 3d 932, 447 N.E.2d 1367, and 
Toepper
, 204 Ill. App. 3d 479, 561 N.E.2d 1281.   

   In 
Fairways
, the court held that the purchaser was not a successor of an initial developer
.  The court did not analyze whether the purchaser had the powers and rights of the developer in light of an assignment.  Thus, the intent of the parties was not considered. 
Fairways
, 113 Ill. App. 3d at 936-37, 447 N.E.2d at 1370-71.  

In 
Toepper
, a seller assigned all its rights to develop under a PUD declaration to a purchaser.  Two years later it assigned all its rights to develop the PUD to the defendants.  The court determined that because the developer had previously assigned its development rights, it had no such rights to assign to the defendants.
 
Toepper
, 204 Ill. App. 3d at 489, 561 N.E.2d at 1287. 

While neither case discussed the intent of the parties to create an assignment, a discussion of their intent was irrelevant to the disposition of both cases.  In this case, intent is relevant and, in our opinion, controlling.  Accordingly, the finding of the trial court in favor of Lakeview is reversed, and we order that partial summary judgment be entered in favor of Bank of Ravenswood.

In light of the above discussion, it is unnecessary for us to consider Ravenswood's argument that the denial of its development rights is an unreasonable restriction on the alienation of property.

For the foregoing reasons the judgment of circuit court of DuPage County is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

HOLDRIDGE and LYTTON, JJ., concur.