**YOUR COMMUNITY BANK, INC., Appellant**

v.

**WOODLAWN SPRINGS HOME-OWNERS ASSOCIATION, INC., Appellee**

2013–SC–000234–DG

Supreme Court of Kentucky.

RENDERED: DECEMBER 18, 2014

COUNSEL FOR APPELLANT: Virginia Hamilton Snell, Clifford Hobson Ashburner, Sara Christine Veeneman, Wyatt, Tarrant & Combs, LLP, Louisville

COUNSEL FOR APPELLEE: Mark Edward Edison, Shepherdsville

COUNSEL FOR AMICUS CURIAE: Debra Kaye Stamper, Louisville

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

In 1994, C. Barr Schuler and JoAnn Brown Schuler, (collectively referred to as the "Schulers") subdivided their property located in Nelson County, Kentucky, thereby creating the Woodlawn Springs Subdivision (the "Subdivision"). The Schulers planned to develop the Subdivision in a series of phases over several years. Each phase of development is subject to a Declaration of Covenants, Conditions and Restrictions (the "Declarations"), which impose various limitations on lots and specific obligations on lot owners. The Schulers also incorporated the Woodlawn Springs Homeowners Association, Inc., (the "Association"), a non-profit Kentucky corporation. A general function of the Association and similar organizations is to maintain and enforce various uses and restrictions imposed on subdivided properties and owners.

To finance the construction of roads, utility lines, and other Subdivision infrastructure, the Schulers borrowed in excess of $1 million dollars from Your Community Bank, Inc., (the "Bank"). The Schulers executed promissory notes to the Bank that were secured by mortgages on Subdivision properties owned by the Schulers. The value of the real estate conveyed as collateral was approximately $650,000.00.

Mr. Schuler died testate on January 11, 2010. Through survivorship and his will, Mr. Schuler's entire interest in the Subdivision passed to Mrs. Schuler, who died testate two months later. Through her will, Mrs. Schuler appointed First Bankers Trust Company ("First Trust") as the executor of her estate and expressly authorized First Trust to convey and sell any and all of her property and assets to compromise, settle or adjust any claim or demand against her estate. At the time of the Schulers' deaths, they were still indebted to the Bank and the Subdivision was incomplete.

In December of 2010, First Trust executed a deed in lieu of foreclosure that conveyed approximately 50 Subdivision lots to the Bank. First Trust also executed a written Assignment and Assumption of Developer Rights (the "Assignment") in favor of the Bank. The Assignment granted the Bank "all of the rights, titles, and interests of [Mrs. Schuler's estate] as the 'Developer' under [the Declarations]." One of the Developer's rights under the Declarations is an exemption from paying annual Association fees.[1]

---

1. The Bank owns lots in six Phases of the development. Although each Phase has a

In 2011, the Association demanded that the Bank pay $15,000 in Association fees on the Subdivision lots it acquired from First Trust as executor of Mrs. Schuler's estate. The Bank refused and asserted that it was exempt. After the Bank failed to pay the fees, the Association acquired a lien on the Subdivision properties owned by the Bank. In response, the Bank filed a declaration of rights action in the Nelson County Circuit Court, which later granted summary judgment in favor of the Bank, concluding that the Bank had succeeded to all the Developer's rights under the Declarations. Accordingly, the court held that the Bank was exempt from paying the Association fees. A unanimous Court of Appeals panel reversed the circuit court. We granted discretionary review. After reviewing the record and the law, we reverse the decision of the Court of Appeals.

### Preliminary Issues

■ The Court of Appeals purportedly relied in part on equitable principles in reaching its determination. Although we recognize that decisions impacting common-interest communities and their residents may, in certain instances, necessitate equitable considerations, such concerns are not necessary here. *See* Restatement (Third) of Property (Servitudes) § 6.12 cmt. a (2014) ("A court has a general dispensing power, under principles of equity jurisdiction, to excuse compliance with requirements that significantly impede the functioning of common-interest communities and their associations."). Furthermore, although an action enforcing a restrictive covenant by injunction is an action in equity, the primary issue here does not involve a restrictive covenant. *See Hoskins v. Walker*, 255 S.W.2d 480, 481

(Ky.1953). To the contrary, the promise to pay Association fees as described in Section 23 of each Declaration is an affirmative covenant, not restrictive or "negative." *See, e.g., Regency Homes Ass'n v. Egermayer*, 243 Neb. 286, 498 N.W.2d 783 (1993).

■ The cause of action and remedy for violating an affirmative covenant is an action at law for damages. *Camenisch v. City of Stanford*, 140 S.W.3d 1 (Ky.App. 2003). Although the present case was not brought by the Association against the Bank for payment of the delinquent fees, it was brought as a declaratory action by the Bank seeking a determination of its rights, one of which was its fee exemption. In holding that the Bank had succeeded to all of the rights of the Developer, the trial court also enjoined the Association from enforcing the fee provisions against the Bank and ordered that the Association remove all liens encumbering the Bank's properties. Therefore, although equitable relief was ordered, the present case is nevertheless an action at law and will be decided accordingly.

### The Assignment

The Bank's primary argument on appeal is that it is exempt from paying the annual Association fees pursuant to the deed in lieu of foreclosure and most importantly, the Assignment. Remiss from the Court of Appeals' decision, however, was any mention of this Assignment. The Assignment is imperative to our analysis.

■ We interpret the terms and provisions of the Assignment according to the well-established principles of contract law. *See, e.g., Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky.2010) ("[i]n the absence of ambiguity, a written instrument

separate Declaration, the Association fee provisions are identical.

will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.") (citations omitted). Furthermore, we review the trial court's order granting summary judgment under the de novo standard. *Giddings & Lewis, Inc. v. Industrial Risk Insurers,* 348 S.W.3d 729 (Ky.2011).

It is undisputed that First Trust was properly vested with the authority to execute the Assignment and the deed in lieu of foreclosure in order to settle the debt owed the Bank on the promissory notes. The Assignment expressly assigned the Bank the following:

> all of the rights, titles and interests of the Assignor as the "Developer" under those certain Declarations of Covenants, Conditions and Restrictions, Woodlawn Springs Subdivision, of record in the Office of the Clerk of Nelson County, Kentucky and more particularly described in Exhibit A attached to and made part of this Assignment (the "Declarations").

The Assignment further provides that the Bank "assumes and agrees to perform the *obligations* of the Developer under the Declarations." (Emphasis added). The intent of the parties to the Assignment is unequivocal; the Bank shall receive the rights, interests, and obligations of the Developer. This determination is reinforced by the applicable terms and provisions found in the Declarations.

### The Declarations

 The Declarations are instruments enumerating real covenants, many of which are restrictive. Restrictive covenants are promises not to perform particular acts and are not subject to the rules of strict construction. *Triple Crown Subdivision Homeowners Association, Inc. v.*

*Oberst, et al.,* 279 S.W.3d 138, 140 (Ky. 2008) (citing *Colliver v. Stonewall Equestrian Estates Ass'n, Inc.,* 139 S.W.3d 521, 523 (Ky.App.2003)). When interpreting restrictive covenants, courts consider the "general scheme or plan of development and surrounding circumstances[,]" as well as the parties' intent. *Colliver,* 139 S.W.3d at 522. As previously noted, however, the Association fee covenant described in Section 23 of each Declaration is an affirmative covenant, not a restrictive covenant. In any event, these alternate rules of construction "may not be used to defeat the obvious intention of the parties...." *Id.* citing *Ashland–Boyd County City–County Health Dept. v. Riggs,* 252 S.W.2d 922, 925 (Ky.App.1952). In the present case, the intent is obvious.

Section 23 of each Declaration specifically requires that "[e]very Lot owner, *except Developer,* shall pay an annual fee" to the Association. (Emphasis added). Those provisions also require that "effective with the occupancy of a house on any Lot, homeowners will automatically be a member of the [Association]." Each Declaration defines the term "Developer" as follows:

> [Mr. and Mrs. Schuler], their successors and *assigns,* which shall include, but shall not be limited to *any person, corporation, association or other entity to which it may expressly assign its rights* ... under these Restrictions. (Emphasis added).

The language here is clear—the Developer may expressly assign its rights under the Declarations. Case law also proves instructive.

In *Horizons North Condominium No. 1 Association, Inc. v. Norbro I,* a condominium association brought an action against a limited partnership claiming that the partnership, which acquired the original developer's entire remaining inventory of apart-

ments, was required to contribute to the association's working capital account upon purchasing the units. 551 So.2d 526 (Fla. Dist.Ct.App.1989). The court held that the limited partnership was a "successor developer" and was not required to contribute to the association's capital account. *Id.* In so holding, the court relied on an express assignment of rights from the original developer to the partnership. *Id.* at 527–28.

In *Board of Managers of Medinah on the Lake Homeowners Ass'n v. Bank of Ravenswood,* a bank purchased undeveloped lots that were part of an unfinished condominium project after the original developer became insolvent. 295 Ill.App.3d 131, 229 Ill.Dec. 629, 692 N.E.2d 402, 404 (1998). The condominium association filed suit against the bank upon the bank's refusal to pay operating expenses. *Id.* Like the present case, the Declarations in *Ravenswood* defined the term developer as the original developer "and its successors and assigns." *Id.,* 229 Ill.Dec. 629, 692 N.E.2d at 405. Although there was no express written assignment of rights, the court held that the bank was an assignee of the developer based on "the intent of the parties as articulated in the mortgage agreement and the deeds...." *Id.,* 229 Ill.Dec. 629, 692 N.E.2d at 406.

Other courts have reached similar conclusions in cases not involving an assignment of rights. *Hughes v. New Life Development Corporation, et al,* 387 S.W.3d 453 (Tenn.2012) (holding that parties to the conveyance of residential lots and undeveloped land intended that the purchasing development company acquire all the rights and interests of the original developer); *Peoples Federal Savings and Loan Association of South Carolina v. Resources Planning Corporation,* 358 S.C. 460, 596 S.E.2d 51 (2004); *McKnight v. Board of Directors,* 32 Ohio St.3d 6, 512

N.E.2d 316, 319 (1987); *but see Sun Valley Iowa Lake Association v. Clinton Anderson,* 551 N.W.2d 621, 640 (Iowa 1996) (holding that subsequent purchasers were *not* successor developers because they did not "sustain[ ] the like part or character the [original developer] had relative to the whole development.") (Emphasis added and citation omitted).

The weight of authority instructs that even absent an express written assignment, subsequent owners may, in many instances, exercise the rights of an original or predecessor developer. The Assignment in the present case fortifies this reasoning because it demonstrates an express manifestation of the assignor's intent to transfer rights *and* delegate obligations by a means other than a mere succession. *See Ravenswood,* 229 Ill.Dec. 629, 692 N.E.2d at 405–07 (noting that although the term "successors" in this context typically refers to entities produced as a result of a corporate consolidation or merger, the term may be interpreted more broadly in certain instances such as foreclosure sales). Therefore, we hold that Bank possesses all of the rights of the Developer under the Declarations.

### Conclusion

For the foregoing reasons, we hereby reverse the Court of Appeals and reinstate the decision of the Nelson Circuit Court.

All sitting. All concur.