# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00978-SCT

*DIAMONDHEAD COUNTRY CLUB AND*
*PROPERTY OWNERS ASSOCIATION, INC.*

*v.*

*THE PEOPLES BANK, BILOXI, MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 06/12/2018 |
| TRIAL JUDGE: | HON. JENNIFER T. SCHLOEGEL |
| TRIAL COURT ATTORNEYS: | RICHARD B. TUBERTINI |
| | DAVID W. CRANE |
| | MICHAEL J. CASANO |
| | DAVID M. ALLEN |
| | NATHAN LAMAR PRESCOTT |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD B. TUBERTINI |
| | MICHAEL J. CASANO |
| | DAVID W. CRANE |
| ATTORNEYS FOR APPELLEE: | NATHAN LAMAR PRESCOTT |
| | DAVID M. ALLEN |
| | LAUREN REEDER McCRORY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 02/27/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.    At issue is whether a purchaser of real property out of foreclosure is automatically

assigned and thereby entitled to the developer's exemption from assessments on the lots

previously owned by the developer.  Diamondhead Country Club and Property Owner's

Association (DPOA) contends that the foreclosing purchaser, Peoples Bank, is not automatically granted an assignment of the developer's personal rights (i.e., the exemption from Property Owner Association (POA) Assessments) in addition to property rights and that the developing company did not expressly assign this exemption to the lender/foreclosing purchaser; therefore, the lender/foreclosing purchaser does not enjoy the exemption.

¶2.     We affirm in part and reverse and remand in part.

**FACTS**

¶3.     Purcell, the developer, acquired property in what is now Diamondhead, Mississippi, and began to develop that property. Purcell promulgated binding subdivision covenants on June 17, 1970. In August 2004, Purcell borrowed money from Peoples Bank for the purchase of a Westwind II jet aircraft. This loan was initially secured by the aircraft, but additional collateral was added to secure the loan, including some of its properties. In September 2004, Purcell borrowed more money from Peoples for operating expenses. This second loan was secured by additional real property in Diamondhead.

¶4.     All of the lots were subject to covenants requiring subsequent purchasers to pay POA fees and assessments. In 1981, Purcell and the DPOA entered into an agreement entitled "Supplemental Agreement," by which Purcell transferred certain assets to the DPOA. The Supplemental Agreement recognized that Purcell was contractually exempt from the payment of POA fees and assessments while it owned the lots. The agreement also stated that the

2

property and lots would be subject to POA fees and assessments upon conveyance to a third party.

¶5. In April 2012, Peoples and Purcell entered into a "Workout Agreement" in which Purcell agreed to provide "additional collateral . . . in the form of three hundred thirty-three lots" and to execute deeds of trust in favor of Peoples. Purcell executed two deeds of trust in favor of Peoples, one on July 8, 2008, and another on August 17, 2012.

¶6. Purcell defaulted on its loans, and Peoples purchased the encumbered lots at the foreclosure sale. The DPOA then began billing Peoples for POA dues and fees associated with the lots. Peoples filed suit against the DPOA seeking a declaration that Peoples was exempt from the payment of fees and assessments. The DPOA counterclaimed for the unpaid fees and for a declaratory judgment that the lots became subject to assessment upon transfer of title to Peoples.

¶7. The case was heard on cross motions for summary judgment. The chancery court entered an order granting summary judgment to Peoples, finding that "Purcell's rights were assigned to [Peoples] at foreclosure, and, as a result, the Bank is exempt from having to pay assessments on the subject property." The DPOA appealed.

**STANDARD OF REVIEW**

¶8. "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence 'in the light most favorable to the party against whom the motion has been made.'" *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (Miss. 2013) (quoting *Pratt v.*

*Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 71 (Miss. 2012), *abrogated on other grounds by Wilcher v. Lincoln Cty. Bd. of Supervisors*, 243 So. 3d 177 (Miss. 2018)).

## DISCUSSION

¶9. At issue is whether the trial court erred by holding that Peoples Bank, as the purchaser in foreclosure, is entitled to the exemption from POA assessments enjoyed by the previous owner, Purcell.

¶10. The DPOA argues four points on appeal: (1) Purcell did not convey the exemption to Peoples, and Peoples received no more rights than Purcell granted; (2) the covenants provide that any transfer to any third party triggers liability for the payment of dues and assessments; (3) development will not be stifled by requiring an express assignment of a developer's exemption; and (4) other states hold that developer's exemptions are not assignable unless done correctly. First, we must determine whether a foreclosing bank automatically assumes this right or whether a specific assignment is required. If an assignment is required, a determination must then be made about whether Purcell did assign its personal contract rights in addition to its property rights.

¶11. The analysis begins by examining the covenants from which Purcell's exemption derives. Article XV of the covenants reads as follows:

> Each purchaser of a lot or lots in the subdivision shall by acceptance of a deed thereto or the signing of a contract or agreement to purchase the same, whether from Declarant or a subsequent owner of such lot or lots binds himself, his heirs, personal representatives, and assigns, to pay all charges and assessments as shall be determined and levied upon such lot and/or purchaser by the Diamondhead Yacht and Country Club, Inc. [,] and/or Diamondhead Country

Club and Property Owners Association, Inc., including interest on such charges and assessments and collection costs thereof . . . and the obligation to pay such charges, assessments, interest and costs thereby constitutes an obligation running with the land. All charges and assessments as shall be determined and levied upon such lot and/or purchaser by the Diamondhead Yacht and Country Club, Inc.[,] and Property Owners Association, Inc.[,] shall be applied to each lot and/or purchaser governed hereby on an equal basis.

This article subjected each third-party purchaser to an affirmative obligation to pay charges and assessments as determined by the DPOA. Purcell, the "Declarant," was exempt from paying assessments during the period it owned the lots.[1] Therefore, Purcell's exemption exists by virtue of the language of this article in the covenants.

¶12. A Supplemental Agreement between Purcell and the DPOA dated December 21, 1984, recognized (but did not create) this exemption afforded by the Covenants. Section 7 of the Supplemental Agreement reads as follows:

Notwithstanding other provisions of this Agreement, Association recognizes that all real property and lots, *while owned by Purcell*, shall be exempt from

---

[1] Black's Law Dictionary defines *affirmative covenant* as "[a] covenant that obligates a party to do some act; esp., an agreement that real property will be used in a certain way. An affirmative covenant is more than a restriction on the use of property." *Affirmative Covenant*, Black's Law Dictionary (11th ed. 2019).

*Restrictive covenant* is defined as "a private agreement, usu. in a deed or lease, that restricts the use or occupancy of real property, esp. by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." *Restrictive Covenant*, Black's Law Dictionary (11th ed. 2019). Under the definitions set forth, a covenant providing for POA assessments against lot owners is not a restrictive covenant because it does not control or restrict the use of the land. Rather, the obligation to pay the maintenance assessments is an affirmative covenant. **Hill v. Palm Beach Polo, Inc.**, 717 So. 2d 1080, 1081-82 (Fla. Dist. Ct. App. 1998).

the payment of any and all liens, charges, assessments, fees or otherwise, levied or sought to be collected by Association.

It is understood and agreed that said *property shall be subject to the payment of all such liens, charges, assessments and/or fees on the first day of the month following conveyance of said property to a third party*, either by Deed or by Contract for Deed. Purcell agrees to notify Association in writing of any such conveyances within thirty (30) days from date of any such conveyance.

(Emphasis added.)

¶13.    The Covenants, coupled with the plain language of this provision in the Supplemental Agreement, suggest that the DPOA and Purcell, the original contracting parties, intended for Purcell to enjoy the developer's exemption from POA assessments while Purcell owned the property and that any conveyance to a third party would trigger liability for assessments. The agreement defined "Purcell" to include Diamondhead Properties, Inc., Diamondhead Corporation, Diamondhead Yacht and Country Club, Inc., and all wholly-owned subsidiaries of Purcell Co., Inc., as well as "their successors and assigns."

¶14.    No Mississippi cases directly address whether an exemption from paying POA assessments is a right or interest to which a purchaser out of foreclosure is automatically entitled.

¶15.    The Bank argues that it is entitled to Purcell's developer's exemption because a purchaser out of foreclosure is vested with the rights of the debtor in and to the land. **Bainbridge v. Woodburn**, 52 Miss. 95, 100 (1876) ("The purchasers at the sale under the decree to enforce that mortgage acquired the title of the land in the exact position it was in at the date of the mortgage . . . ."); **Vincent v. J.W. McClintock, Inc.**, 200 Miss. 445, 455,

6

27 So. 2d 681, 682 (1946) (The purchaser at a foreclosure sale acquires all of the rights and interests in the mortgaged property.). While it is true that a purchaser at foreclosure steps into the shoes of the debtor and thereby acquires the rights and interests in the mortgaged property, those rights and interests are limited to those that are conveyed by the debtor in the deed of trust and that are in and about the mortgaged property.

¶16. This Court has not specifically defined personal rights in the context of a purchase of real property through foreclosure, but it has acknowledged the distinction between real property rights or interests that travel with title to the property by operation of law and *personal* rights that belong to the grantee and do not travel with title but may be assigned. ***Davis v. Davis (In re Estate of Waitzman)***, 507 So. 2d 24, 26-27 (Miss. 1987); ***Henderson v. Copper Ridge Homes, LLC***, 273 So. 3d 750, 754-55 (Miss. 2019).

¶17. In Mississippi, all covenants having to do with realty or the use of realty are either real or personal. ***Vulcan Materials Co. v. Miller***, 691 So. 2d 908, 913-14 (Miss. 1997) (quoting 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 12 (1995)). Personal covenants create a personal obligation or right "enforceable at law only between the original covenanting parties." ***Id.*** at 913 (quoting 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 12 (1995)). Such covenants are "those rights that can only be exercised by the one who created and imposed the restrictions." ***Medinah on the Lake Homeowners Ass'n v. Bank of Ravenswood***, 692 N.E. 2d 402, 404-05 (Ill. App. Ct. 1998) (holding that the rights to construct and maintain structures reserved by a declarant or a developer are personal rights which could not be exercised by the purchaser of a property out of foreclosure without a

7

succession or assignment (citing *Fox Lake Hills Prop. Owners Ass'n, v. Fox Lake Hills, Inc.*, 256 N.E.2d 496 (Ill. App. Ct. 1970))). "Because these rights are reserved by the creator, personal rights do not run with the land." *Ravenswood*, 692 N.E.2d at 405 (citing *Cty. Lakes Townhouse Ass'n v. Shenandoah Dev. Corp.*, 447 N.E.2d 1367, 1370 (1983)).

¶18. Personal rights are distinguishable from real property rights that pass with title. Under Mississippi law, if a covenant is a real covenant, it is said to run with the land. *Barton v. Fred Netterville Lumber Co.*, 317 F. Supp. 2d 700, 704 (S.D. Miss. 2004) (citing *Vulcan*, 691 So. 2d at 914). And in order to run with the land, this Court has held that a covenant must meet three conditions:

> For a covenant to be real rather than personal, it must be shown that (1) the covenanting parties intended to create such a covenant; (2) privity of estate exists between the person claiming the right to enforce the covenant and the person upon whom the burden of the covenant is to be imposed; and (3) the covenant "touches and concerns" the land in question.

*Vulcan*, 691 So. 2d at 913 (quoting 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 13 (1995)).

¶19. There is no evidence that Purcell intended to create a developer's exemption that would run with the land. Such a covenant would entitle all subsequent purchasers of the property in question to an exemption from paying POA fees and assessments. This would clearly contradict the intent to collect assessments from third parties, as evidenced by Article XV of the covenants. Therefore, this exemption is extinguished the moment that a lot is purchased by a third party. Further, an exemption from POA assessments is not a covenant or right that touches and concerns the land. Following the reasoning by this Court in

8

*Henderson*, an exemption from POA assessments is a personal right that would not automatically pass with title out of foreclosure. Rather, it must be conveyed through the deed of trust.

¶20.    The second part of the analysis begins by examining the contracts at issue, including the two deeds of trust that comprise the transaction between Purcell and Peoples Bank. In order for Peoples Bank to enjoy this exemption, Purcell must have legally assigned the right. ***Great S. Nat. Bank v. McCullough Envtl. Servs., Inc.***, 595 So. 2d 1282, 1287 (Miss. 1992) ("As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor." (quoting 6A C.J.S. *Assignments* § 73)). When examining the contracts at issue, this Court should ascertain the intent of the parties "by examining the language contained within the 'four corners' of the instrument in dispute." ***Pursue Energy Corp. v. Perkins***, 558 So. 2d 349, 352 (Miss. 1990) (Court should ascertain "intent of the parties from [within] the four corners of the instrument" (quoting ***Pfisterer v. Noble & Cities Serv. Oil Co.***, 320 So. 2d 383, 384 (Miss. 1975))).

¶21.    The 2008 deed of trust conveying the Glen Eagle lots to Peoples Bank included

> [t]he property . . . . together will all rights, easements, appurtenances, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as property).

9

This is a clear assignment of title and real property rights connected to the property. Additionally, paragraph 26 of the deed of trust conveys a security interest in all personal property located on *or connected with* the property, including "general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property." (Emphasis added.) The developer's exemption is a personal right connected to the property that was assigned by this provision. Therefore, both real property rights and the personal rights of Purcell pertaining to the Glen Eagle lots were properly assigned and conveyed to Peoples. Peoples is therefore entitled to the exemption from paying assessments in connection with these lots.

¶22. But the 2012 deed of trust conveying the Diamondhead lots contains no such language. There are no provisions in the 2012 deed of trust assigning the developer's exemption or Purcell's personal rights or other rights related to the property generally as security for the loan. The deed of trust reads as follows:

> Debtor hereby conveys and warrants unto Trustee the [lots] together with all improvements and appurtenances now or hereafter erected on, and all fixtures of any and every description now or hereafter attached to, said land (all being herein referred to as the "Property") . . . .

This provision specifically conveys only the real property identified in the deed of trust (Diamondhead lots), as well as any improvements, appurtenances,[2] or fixtures attached to or

---

[2] An *appurtenance* is "[s]omething that belongs or is attached to something else; esp., something that is part of something else that is more important." *Appurtenance*, Black's Law Dictionary (11th ed. 2019). In the context of what passes by deed,

> [A]ppurtenances are things belonging to another thing as principal and which

10

erected on the land. But there is no assignment of Purcell's personal right to be exempt from POA assessments in this deed of trust. Therefore, Peoples is liable for assessments levied on the Diamondhead lots.

¶23. We acknowledge the concern expressed by the chancery court that the assessment of POA fees could stifle development. But we do not hold that personal contract rights, such as developer's exemptions from POA assessments, are not assignable. Rather, these rights must actually be assigned. Lenders such as Peoples must ensure that they are properly collateralized.

¶24. In this particular case, the developer's exemption was a personal right. This right was properly assigned and conveyed to Peoples in connection with the Glen Eagle lots. Therefore, Peoples is entitled to the exemption from assessments on these lots. But this right was not property assigned and conveyed to Peoples in connection with the Diamondhead lots. Peoples is not entitled to a personal right that was not assigned to it.

**CONCLUSION**

¶25. The covenants provide that the developer's exemption would be eliminated by conveyance of the property to a third party. Therefore, the exemption was a personal right requiring assignment to Peoples. The 2008 deed of trust conveys both the real property rights and personal rights of Purcell, but the 2012 deed of trust is void of any language granting

---

pass as incident to the principal thing. The term 'appurtenance' passes nothing but the land and such things as belong thereto and are a part of the realty. . . . [W]hen the land is sold, the appurtenant right is automatically transferred to the purchaser, that is, it runs with the land.

26A C.J.S. *Deeds* § 285 (citations omitted), Westlaw (database updated Feb. 2020).

11

Purcell's right of exemption to Peoples. Therefore, Peoples is entitled to the exemption from paying assessments in connection with the Glen Eagle lots, but it is liable for assessments levied on the Diamondhead lots. As to the Glen Eagle lots, we affirm. We reverse and remand as to the Diamondhead lots.

¶26. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**RANDOLPH, C.J., MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. KITCHENS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND COLEMAN, J.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶27. I disagree that the 2008 deed of trust operated as an assignment of Purcell's right not to pay homeowners' dues. Therefore, I respectfully concur in part and dissent in part. I would hold that neither of the two deeds of trust assigned the developer's exemption to The Peoples Bank.

¶28. When determining the meaning of a deed, the Court looks to the language within the four corners of the instrument. *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003) (citing *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990)). "Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Id.* (citing *Simmons v. Bank of Miss.*, 593 So. 2d 40, 42-43 (Miss. 1992)). "[C]ourts are not at liberty to infer intent contrary to that emanating from the text at issue." *Id.* (citing *Simmons*, 593 So. 2d at 42-43). If the Court cannot arrive at a clear translation of the parties' intent, then

we should apply the canons of construction. *Id.* at 753 (citing *Pursue*, 558 So. 2d at 352). "Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party." *Id.* at 753 (citing *Leach v. Tingle*, 586 So. 2d 799, 801-02 (Miss. 1991)). If after these steps the meaning cannot be discerned, "the court should consider extrinsic or parol evidence." *Id.* (citing *Leach*, 586 So. 2d at 801-02).

¶29.    The majority finds that the following language in the 2008 deed of trust conveyed Purcell's homeowners' dues exemption:

> [t]he property . . . together with all rights, easements, appurtenances, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock, crops, timber, all diversion payments or third party payments made to crop producers and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as property).

I disagree with the majority's interpretation of this language. The right not to pay homeowners' dues is not an easement, appurtenance, mineral right, oil and gas right, water right, riparian right, well, ditch, water stock, crop, timber, diversion payment, or third-party payment to crop producers. It is not an existing or future improvement, structure, fixture, or replacement. It is a right, but, as the majority thoroughly explains in the first part of its analysis, it is not a right that is "part of the real estate described (all referred to as property)." For that reason, the word *right* in this clause does not include Purcell's personal right not to pay homeowners' dues.

¶30. Having searched the first clause for a conveyance of the right at issue and having failed to find one, I proceed to the second clause, paragraph 26 of the deed of trust. Because the majority does not quote paragraph 26 its entirety, I do so here:

> **PERSONAL PROPERTY.** Grantor gives to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used and useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term Property). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer loan" as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

¶31. This clause does not expressly assign the right not to pay homeowners' dues. The clause does not mention rights at all. It expressly governs personal property. The majority fits Purcell's exemption from paying homeowners' dues into this clause by declaring it a general intangible connected with the property that is used or useful in ownership, operation, management, or maintenance of the property.

¶32. I would find that this clause is utterly ambiguous with regard to whether it encompasses Purcell's homeowners' dues exemption. The Mississippi Uniform Commercial Code—Secured Transactions defines "[g]eneral intangibles" as

> any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software.

Miss. Code. Ann. § 75-9-102(a)(42) (Rev. 2016). "Examples [of general intangibles] are various categories of intellectual property and the right to payment of a loan of funds that is

14

not evidenced by chattel paper or an instrument." U.C.C. § 9-102 cmt. 5d (Am. Law Inst. & Unif. Law Comm'n), Westlaw (database updated Sept. 2017). The only term in Section 75-9-102(a)(42) that possibly implicates a developer's exemption from homeowner's dues is "payment intangibles," defined as "a general intangible under which the account debtor's principal obligation is a monetary obligation." Miss. Code. Ann. § 75-9-102(a)(61) (Rev. 2016). In other words, a security interest in a payment intangible is a security interest in a debt owed to the borrower.

¶33.    Purcell's exemption from homeowners' dues is a right derived from the covenants. According to the covenants and supplemental agreement, the right is personal to the developer and is destroyed when the lots are sold to a third party. If, instead of a security interest in an exemption from homeowners' dues, a security interest in a lawn mower, a bank account, or a payment intangible such as a debt owed to Purcell in connection with the property were at issue, I would believe that paragraph 26 covers it. But the majority's finding that the developer's personal exemption from homeowners' dues fits neatly into a clause listing various kinds of personal property strikes me as a stretch. Because paragraph 26 is ambiguous as to whether it conveyed a security interest in the developer's homeowners' dues exemption, it must be construed against the drafter, the Bank. *Royer Homes*, 857 So. 2d at 752 (citing *Leach*, 586 So. 2d at 801-02). Therefore, I would hold that the Bank is not entitled to the homeowners' dues exemption on any of the lots.

    **KING, P.J., AND COLEMAN, J., JOIN THIS OPINION.**