**TRIPLE CROWN SUBDIVISION HOMEOWNERS ASSOCIATION, INC., Appellant,**

v.

**Clinton S. OBERST, et al., Appellees.**

No. 2006–SC–000934–DG.

Supreme Court of Kentucky.

Nov. 26, 2008.

Rehearing Denied April 23, 2009.

Dennis Ray Williams, Jennifer H. Langen, Adams, Stepner, Woltermann & Dus-ing, PLLC, Covington, KY, Counsel for Appellant.

Gregory Wayne McDowell, Gregory W. McDowell, PSC, Florence, KY, Counsel for Appellees.

Todd V. McMurtry, Deters, Benzinger & Lavelle, PSC, Crestview Hills, KY, Counsel for Amicus Curiae.

Opinion of the Court by Justice SCHRODER.

The question in this appeal is whether or not the restrictive covenants are sufficiently described so as to be incorporated by reference and binding on the property herein. We opine that when the chain of title contains a specific reference, i.e. "subject to the Declaration of Covenants recorded in Miscellaneous Book 292, Page 1 of the Boone County Clerk's records ...", the property in question is subject to the restrictive covenants. Because we are reversing the Court of Appeals on this issue, it will be necessary to remand for reconsideration of collateral issues.

The property in question is located in Boone County, but it could be located in any county, as the rules are the same for title examinations. A developer acquired some land for the purpose of developing a subdivision. In order to establish a general plan and uniform scheme of development, the developer proposed and recorded in the County Clerk's Office, a "Declaration of Covenants, Conditions and Restrictions ..." that applied to all property owned[1] by the developer, and there was an "expansion" clause which allowed the developer to subject "after-acquired" property to those same restrictions. The "expansion"

---

1. The Declaration contained a legal description, so the covenants, conditions, and restrictions were picked up in the chain of title.

clause simply required the developer[2] to amend the original restrictions to include the legal description of the after-acquired property (which would place the restrictions in the chain of title to after-acquired property).

A title search reveals the current owners of the property have this developer in their chain of title. The property in question was "after-acquired" property of the developer. When the developer sold the property (Deed Book 551 at Page 88), the deed included this language: "subject to the Declaration of Covenants recorded in Miscellaneous Book 292, Page 1, . . . and subsequent amendments thereto." The developer did not, however, also amend the restrictions "expansion" clause to include the legal description of this "after-acquired" property. The current owners contend the failure to amend before the sale renders the restriction inapplicable to their property.

The trial court ruled that the reference in the chain of title (DB 551/P88), incorporating the restrictions at MB 292/Pl, "acting alone was sufficient to impose the covenants and restrictions . . . upon all subsequent purchasers. . . ."[3] The Court of Appeals disagreed, recognizing the reference in the chain of title, but concluding more was needed to subject the property to these specific restrictions, that the restriction at MB 292/Pl had to be amended to include the legal description of the property in question. We disagree, and opine the trial court was correct.

■■■ There is no doubt of the developer's intention in the chain of title at DB 551/P88, to incorporate by reference, the restrictive covenants previously recorded at MB 292/Pl. In *Brandon v. Price*, 314 S.W.2d 521, 523 (Ky.1958), our predecessor, the Court of Appeals, decided that "[u]nder the modern view, building restrictions are regarded more as a protection to the property owner and the public rather than as a restriction on the use of property, and the old-time doctrine of strict construction no longer applies." The Court also recognized the importance of a general plan or scheme in developing a subdivision. *Id.* In *Colliver v. Stonewall Equestrian Estates Ass'n, Inc.*, 139 S.W.3d 521, 522 (Ky.App.2003), the Court of Appeals recognized strict construction of restrictive covenants is out, and the current rule is "the intention of the parties". The intention of the parties governs even if "that intention be not precisely expressed." *Id.* And the "general scheme or plan of development" is an important factor to consider. *Id. Colliver* also recognized that a homeowners' association had standing to enforce restrictive covenants. *Id.* at 523–24. *Black v. Birner*, 179 S.W.3d 873, 878 (Ky. App.2005) noted that "[m]ore recently, developers have adopted the practice of setting out the covenants in a single declaration that is recorded against the lots in the development before any conveyances are made. The declaration is then incorporated by reference in subsequent deeds to various lots." The question in *Black* was whether restrictions, which had expired, were renewed by language in a deed that read "[t]his conveyance is subject to all restrictions and easements of record which

---

2. Only the developer gets to decide to add properties. The other properties subject to the restrictions do not have to approve said additions.

3. Although the trial court also discussed the doctrine of "reciprocal negative easements", the developer did not yet own the property in question, thus the restrictions could not attach to property owned by someone else. *See Black v. Birner*, 179 S.W.3d 873, 879 (Ky.App. 2005). *See also, Oliver v. Schultz*, 885 S.W.2d 699, 701 (Ky.1994), which abolished reciprocal negative easements after 1994 unless they are recorded within the chain of title.

affect the subject property." *Id.* at 881. In holding such language was only precautionary, not creating restrictions if none existed at the time of conveyance, the Court reviewed similar deed language from other states and decided there were no restrictions being incorporated by reference unless enforceable encumbrances or restrictions already existed. *Id.* at 881–82. That is a different situation than the one we have here. Clearly, the intention of the language "subject to the Declaration of Covenants recorded in Miscellaneous Book 292, Page 1, ... and subsequent amendments thereto[,]" was to subject the property to these restrictive covenants, incorporating them by reference, and was not intended as mere precautionary language as a more general statement, like "subject to restrictions of record, if any", would be.

■■■ "Interpretation or construction of restrictive covenants is a question of law[,]" which allows us to "review this matter de novo." *Colliver,* 139 S.W.3d at 523. The restrictions are in the chain of title and the language of the deed (DB 551/P88) expresses an intent to incorporate by reference the specific restriction contained in the Declaration recorded (beginning) at MB 292/P1, notwithstanding that the restrictions themselves were not amended to include a legal description of the property in question. Amending the restrictions to include additional legal descriptions is one way to subject property to said restrictions, but "incorporation by reference" is, as the Court said in *Black,* at 878, an accepted practice for "setting out the covenants...." Although amending the declaration to include an additional legal description for after-acquired property would have made it easier for a title examiner, the absence thereof does not obscure or defeat the obvious intent of the developer. It merely fails to "precisely" express the intention of the developer. *See Colliver,* at 522.

Because we are reversing the Court of Appeals on the application of the restrictive covenants to the property in question, a discussion of the doctrine of negative reciprocal easements is moot. The issue of attorney fees, if any, is now a matter of concern. Although the Court of Appeals decided the issue was moot in light of its ruling, it went on to discuss the issue, adopting the trial court's analysis of KRS 411.195, which purportedly allows attorney fees to the original parties to an agreement to pay attorney fees. The Homeowners' Association contends the property owner is responsible because there is privity of contract with the original parties.

A review of the restrictive covenants beginning at MB 292/P1, reveals a provision (Section 6.7) for collection of unpaid assessments, interest, and "the costs of collection thereof, including attorney fees,...." Although it could be argued that attorney fees for collection of assessments is not the same as attorney fees for enforcement of the restrictive covenants, the issue appears academic in light of KRS 411.195 which allows attorney fees, and the cases of *Farmers Bank & Trust Co. v. Brazell,* 902 S.W.2d 830, 833 (Ky.App. 1995), and *CSX Transp., Inc. v. First Nat'l Bank of Grayson,* 14 S.W.3d 563, 569 (Ky. App.1999), which held said statute only applies to the original parties to the contract.

Appellant's and the Amicus's argument that we should overrule *stare decisis* because the fees are needed to pay its bills is without merit. *Colliver,* 139 S.W.3d at 526, recognized that homeowners' associations can generally levy special assessments for a variety of reasons, including lawsuits. Even the Collivers, the unsuccessful parties, had to pay part of the assessment in that case.

The property owners also argued (III.(5)) in its brief that even if their prop-

142

erty was subject to the restrictive covenants and assessments, that the Triple Crown Subdivision Homeowners' Association, Inc. had to collect assessments from the Promenade Homeowners' Association Which in turn collects from the property owners, and that this procedure was changed sometime during litigation. The Appellant's reply brief does not address this issue and it is not addressed by the Court of Appeals decision. This matter will need to be decided by the trial court on remand, as well as the amounts of assessments due, costs, and interest.

For the foregoing reasons, the opinion of the Court of Appeals is reversed and the matter remanded for further proceedings consistent with this opinion.

MINTON, C.J.; CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur. ABRAMSON, J., not sitting.