RENDERED: AUGUST 1, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1245-MR

TAMARA L. COOPER HART;
JENNIFER CABA; MICHAEL CABA;
AND NANCY CASSIDY                                          APPELLANTS


APPEAL FROM MONTGOMERY CIRCUIT COURT
v.          HONORABLE ELIZABETH H. DAVIS, JUDGE
ACTION NO. 23-CI-90032


KENDALL BACK AND MARI LYNN
BACK                                                       APPELLEES


OPINION
REVERSING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND KAREM, JUDGES.

COMBS, JUDGE: This matter involves a dispute over the correct interpretation

and application of a restrictive covenant running with the parcels of land belonging

to adjacent landowners in rural Montgomery County. That covenant restricts the

use of property to residential purposes and specifically forbids commercial uses -- with an exception for farming or agricultural purposes.

The Appellants are Tamara L. Cooper Hart, Nancy Cassidy, Michael Caba, and Jennifer Caba (wife of Michael Caba). They filed a declaratory action in Montgomery Circuit Court seeking to enforce the restrictive covenant to prohibit the operation of a commercial enterprise -- a venue for large-scale social events -- upon the Backs' (the Appellees') property. The Backs, also subject to the terms of the restrictive covenant, are the operators of the "events" operation.

After ultimately holding an evidentiary hearing, the circuit court entered an injunction in favor of the Backs, concluding that their conduct of the events venue did not violate the restrictive covenant. The Appellants now challenge that injunction in this appeal.

After our review of the rather complicated procedural record, we reverse the judgment of the Montgomery Circuit Court.

In February 2023, the Appellants filed a declaratory judgment action against the Backs, their neighbors. They alleged that the Backs' operation of the social event venue violated a restrictive covenant included in the conveyance of the parties' property. They sought an injunction precluding this use of the property.

In their response, the Backs denied that their operation of the venue violated the deed restriction. They also filed a counterclaim alleging that Hart,

Cassidy, and the Cabas had interfered with their "expectancy related to the [business] venture in an attempt to destroy their business." They sought damages and an order enjoining Hart, Cassidy, and the Cabas "from interfering in any way with the business being conducted" on their property. The Backs did not deny that their property is subject to the deed restriction limiting each four-acre tract to no more than one dwelling and specifically providing that the "property shall be used for residential purposes only and no commercial use permitted except for farming or agricultural purposes." Hart, Cassidy, and the Cabas answered and denied the allegations against them.

In May 2023, the Backs filed a motion for summary judgment. In a memorandum filed in support of the motion, they argued that they were entitled to judgment as a matter of law because operation of the venue, coupled with the horticultural activities (growing flowers) being conducted on the farm, constituted "agritourism" as defined by the provisions of KRS[1] 247.801. They referred the court to correspondence from the Kentucky Department of Agriculture indicating that "[a]gritourism, including any component listed [in the statutory provision, specifically, weddings and ancillary events], is Agriculture." Hart, Cassidy, and the Cabas responded and filed their own motion for summary judgment.

---

[1] Kentucky Revised Statutes.

In their motion, Hart, Cassidy, and the Cabas argued that using farmland to host large-scale social events for profit is plainly inconsistent with "farming or agricultural purposes" **as that phrase is used in the deed restrictions**. They explained that the statutory definition of "agritourism" is immaterial especially where the term came into fashion long after the deed restrictions were created to preserve farmland and to benefit the several adjoining property owners by maintaining the area's rural character.

In June 2023, the trial court granted judgment in favor of Hart, Cassidy, and the Cabas. The court held that the parties are bound by the clear meaning of the language used in the deed restrictions and that the Backs' commercial activities on the property were inconsistent with farming or agriculture. It also observed that weddings and other social events held at the farm were not synonymous with the limited horticultural activities performed on the farm. Pursuant to the provisions of our civil rule (CR)[2] 54.02, the trial court designated its otherwise interlocutory judgment as final and appealable -- there being no just cause for delay. The Backs filed a timely motion to alter, amend, or vacate. The trial court then decided that the matter should be set for an evidentiary hearing.

---

[2] Kentucky Rules of Civil Procedure.

In an order entered on November 22, 2023, the trial court reversed its original conclusion after hearing extensive testimony. The court summarized testimony provided by various witnesses. It observed that "[t]he Restrictive Covenant provisions do not define farming/agriculture." It concluded that the "policy envisioned by the legislature here envisions protecting agriculture as it evolves and is confronted by non-agricultural encroachment and it does so without defining agriculture as a historically static definition." The court concluded that the Backs' "use of the property is agricultural within the legislative policies of the state and with [the Backs'] present use of the property it is not violative of the Restrictive Covenant."

On December 21, 2023, Hart, Cassidy, and the Cabas filed a motion requesting that the court's order be made final and appealable. By its order entered December 27, 2023, the Montgomery Circuit Court amended its November order to add, "[t]his Order shall be FINAL and APPEALABLE."

Hart, Cassidy, and the Cabas filed a notice of appeal on January 10, 2024. Some days later, we ordered them to show cause why the appeal should not be dismissed either as having been taken from an interlocutory order not properly made final and appealable by operation of our rule of CR 54.02 or because the appeal was not timely pursuant to the provisions of our Kentucky Rules of Appellate Procedure (RAP) 3(A)(1). Hart, Cassidy, and the Cabas filed their

response. Following our review of that response and by our order entered on February 28, 2024, the appeal was dismissed.

On April 19, 2024, Hart, Cassidy, and the Cabas filed a motion in Montgomery Circuit Court requesting the trial court to make its judgment final and appealable in accordance with the specific provisions of CR 54.02. The court's judgment entered on September 17, 2024, provided that "**there is no just reason for delay** and this is, therefore, a final and appealable judgment." (Emphasis added.) Hart, Cassidy, and the Cabas filed their second notice of appeal on October 15, 2024.

On appeal, Hart, Cassidy, and the Cabas now argue that the circuit court erred by concluding that the Backs' use of the property as a commercial social event venue constitutes "farming or agricultural purposes" -- in violation of the provision restricting their property to residential use and specifically forbidding commercial use. They contend that the concept of "agritourism," whatever its definition, is irrelevant to the analysis. The Backs disagree, but they also contend that the appeal must be dismissed as untimely pursuant to our Rules of Appellate Procedure.

We first consider whether the appeal is timely. As we explained in our order dismissing the initial appeal, our jurisdiction may be invoked by either of two means. Pursuant to the provisions of CR 54.01, a final judgment may be

appealed if it adjudicates "all the rights of all the parties in an action or proceeding[.]" Alternatively, where there are multiple claims or multiple parties, a judgment may be made final under the provisions of CR 54.02. In the case of multiple claims, the court may grant a final judgment upon one or more but less than all of the claims by concluding that there is no just cause for a delay in appealing its order. The judgment **must recite that conclusion** and indicate that the court's judgment is final. **Strict compliance** with the rule is required. *Peters v. Board of Education of Hardin County*, 378 S.W.2d 638, 639 (Ky. 1964). A trial court's failure to include both recitations in a judgment renders it interlocutory and nonappealable. *Vorherr v. Coldiron*, 525 S.W.3d 532, 540 (Ky. App. 2017).

After the initial notice of appeal was filed on January 10, 2024, we considered both methods by which our jurisdiction is invoked. We concluded that the trial court's judgment of November 22, 2023, had not been made final pursuant to the specific requirements of CR 54.02 because there was no indication that the trial court determined that there was **no just cause for delay** in appealing its order disposing of the claim filed by Hart, Cassidy, and the Cabas.

With respect to the alternative means by which our jurisdiction could be invoked (*i.e.*, that the trial court's order of November 22, 2023, adjudicated all of the rights of all the parties), we noted that Hart, Cassidy, and the Cabas had not sufficiently addressed the issue in their response to our show cause order.

Moreover, the limited record available at that time did not permit us to determine the issue definitively. Giving Hart, Cassidy, and the Cabas the benefit of the uncertainty, we determined that the complete circuit court record might well reveal that a claim remained to be decided and that the circuit court simply failed to make its judgment final pursuant to the specific requirements of the provisions of CR 54.02 by failing to recite its conclusion that there was no just cause for delay. However, if the complete record of the circuit court demonstrated that the trial court's judgment of November 22, 2023, did, in fact, adjudicate all of the rights of all of the parties, then that judgment became final and appealable at that time -- and the subsequent appeal would have been untimely.

The Backs argue that the trial court's order of November 22, 2023, adjudicated all claims and, consequently, that no finality language was necessary to make the order immediately appealable. Because Hart, Cassidy, and the Cabas failed to file a notice of appeal within 30 days, the Backs contend that the appeal is untimely.

In reply, Hart, Cassidy, and the Cabas assert that following their response to our show cause order, this court "explicitly found that the November 2023 Order, amended by the December 2023 Order, was interlocutory and not final for appeal." That is incorrect. Instead, we observed that absent the required language indicating that the trial court intended to make an otherwise interlocutory

order final and appealable pursuant to the requirements of CR 54.02, we could not assume jurisdiction. However, we were unable to decide conclusively whether the order of November 2023 was interlocutory because we did not have before us the complete record of the circuit court. Moreover, we directed Hart, Cassidy, and the Cabas to address the question of whether the trial court's November 22, 2023, order "adjudicat[ed] all the rights of all the parties" and was, therefore, immediately final and appealable pursuant to CR 54.01. However, their response omitted discussion of that issue. We observed that "[t]his circumstance invites error and determination of this issue is not required to reach our disposition today." We concluded that, in either event, that our appellate jurisdiction had not been properly invoked and dismissed the appeal.

Because they have misread our order dismissing, Hart, Cassidy, and the Cabas have not presented an argument in support of their position that the circuit court's order of November 22, 2023, remained interlocutory (until it was converted by operation of CR 54.02) because it did not adjudicate all the rights of all the parties in the case. However, because we now have the complete circuit court record before us, we can confirm that the Backs' claim for damages **remained to be adjudicated**. Thus, the circuit court's order of November 22, 2023, was not immediately final and appealable. It remained interlocutory until it was made final and appealable in accordance with the provisions of CR 54.02.

Consequently, the appeal is now timely, and exercise of our appellate jurisdiction is proper.

Like any other contract or agreement, restrictive covenants governing the use of real property are enforceable according to their terms. Where an agreement's language is clear and unambiguous, it must be given effect. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). Kentucky views restrictive covenants as a protection for property owners and the public rather than as a restriction on the use of property. *Highbaugh Enterprises Inc. v. Deatrick and James Construction Co.*, 554 S.W.2d 878, 879 (Ky. App. 1977); *Ashland-Boyd Cnty. City-Cnty. Health Dep't v. Riggs*, 252 S.W.2d 922, 925 (Ky. 1952) ("[R]estrictions constitute mutual, reciprocal, equitable easements of the nature of servitudes in favor of owners of other lots of a plot of which all were once a part; that they constitute property rights which run with the land so as to entitle beneficiaries or the owners to enforce the restrictions[.]"). As a result, the doctrine of strict construction does not apply. *Id.* "Interpretation or construction of restrictive covenants is a question of law." *Colliver v. Stonewall Equestrian Estates Ass'n, Inc.*, 139 S.W.3d 521, 523 (Ky. App. 2003); *Triple Crown Subdivision Homeowners Ass'n, Inc. v. Oberst*, 279 S.W.3d 138, 141 (Ky. 2008). Therefore, we review this matter *de novo*. *Id.*

There is no question that the Backs' property is subject to the restrictive covenant limiting its use to "residential purposes only and no commercial use permitted except for farming or agricultural purposes." In 1996, the Backs' predecessor in title divided the property into several tracts and, by imposing specific use restrictions, unambiguously intended to cause the area to retain its rural character by prohibiting high-density housing and any commercial activity that was not agricultural in nature. However, the trial court observed that provisions of the restrictive covenant limiting use of the property to residential use and prohibiting commercial activities -- except for farming and agriculture -- failed to define "farming" or "agriculture." It opined that "definitions of these practices have probably evolved over the history of mankind as we left hunting, fishing and gathering . . . to today's international large scale commercial production."

The trial court appears to have relied on public policy announced in the provisions of KRS 413.072(3)(b)2.b. and c. These provisions establish that an agricultural operation may include sustainable agriculture practices defined as "science-based practices" that demonstratively lead to performance improvements aimed at meeting present needs and improving:

> the ability of future generations to meet their needs while advancing progress toward environmental, social, and economic goals and the well-being of agricultural producers and rural communities.

KRS 413.072(3)(b)2.c.

-11-

We are persuaded that the circuit court's reliance on these provisions is erroneous -- most decidedly because it circumvents the **plain language** of the restrictive covenant. Furthermore, it is both a logical and practical leap to assume that operating a commercial enterprise focused on large-scale social events on property restricted in use to residential, farming, and agricultural purposes could be viewed as a science-based practice tending to advance the well-being of agricultural producers and rural communities. The covenant prohibiting use of the Backs' property for any commercial purpose beyond farming and agriculture production clearly does not violate public policy seeking to protect farmland, agriculture, and rural life.

Courts are not at liberty to create ambiguity in an instrument where none exists. *O.P. Link Handle Co. v. Wright*, 429 S.W.2d 842, 847 (Ky. 1968). The terms of the restrictive covenant applicable to the Backs' property are clear, direct, and unambiguous. The restrictive covenant was violated when the Backs began using their property as a commercial social event venue. The circuit court erred by failing to interpret the restrictive covenant in accordance with its plain meaning, and its judgment must be reversed.

Perhaps anticipating this conclusion, the Backs argue that the judgment can be affirmed upon other grounds. They suggest that the right of their neighbors to enforce the terms of the restrictive covenant contained in their deeds

-12-

has been lost through waiver, abandonment, or a change in the character of the rural area in which they reside. We disagree.

The Backs explain that two years after the restrictive covenants were created by deed, Two Sisters Pumpkin Patch began an agritourism operation on a neighboring farm. They indicate that "[o]n the weekends, there is often music, and the kids and the cattle are frequently loud." They observe that no one has ever complained about this use of nearby farmland.

The Backs' argument is unpersuasive for a variety of reasons. It is undisputed that the pumpkin farm **is not** subject to the restrictive covenants applicable to the Backs' property. Consequently, the right of the Backs' neighbors to enforce their reciprocal rights cannot have been waived or abandoned by their failure to object to children picking pumpkins on property not subject to the disputed restriction. Additionally, there is no reason to assume that operation of a pumpkin patch on a nearby farm has so fundamentally changed the rural character of the area so that it is no longer possible to accomplish the purpose intended by the restrictive covenant. *See Bagby v. Stewart's Ex'r*, 265 S.W.2d 75, 77 (Ky. 1954) (quoting 14 AM. JUR. *Covenants* § 302, page 646) ("A change in the character of the neighborhood which was intended to be created by restrictions has generally been held to prevent their enforcement in equity, where it is no longer possible to accomplish the purpose intended by such covenant . . . .").

-13-

It is noteworthy to observe that zoning law (allowing for and sensitive to the vicissitudes of changing economic patterns and life styles) is not synonymous with contract law (which generally binds parties to a meeting of minds regardless of extraneous changes). It appears that these two areas of the law were erroneously intermingled or conflated in this case.

The judgment of the Montgomery Circuit Court is reversed.


ALL CONCUR.


BRIEFS FOR APPELLANTS:

Rebecca G. McCoy
Mt. Sterling, Kentucky

BRIEF FOR APPELLEES:

Ira S. Kilburn
Salt Lick, Kentucky